## THE STATE v. JESSE HATCHER, Appellant.

Division Two, March 4, 1924.

1  **BILL OF EXCEPTIONS:** Attached to Transcript. The transcript recited: "Comes now the defendant and presents his bill of exceptions which are examined by the court, and same are approved and ordered filed and made a part of the record in this cause, which is accordingly done," which was an entry made by the trial judge in open court. This was followed by the certificate of the clerk that said transcript "is a true, full and complete transcript of all records and proceedings of the Nodaway County Circuit Court in the cause therein mentioned." To this was attached by metal slips a document entitled "Bill of Exceptions" in the case, signed by the trial judge and prosecuting attorney with pen and ink. *Held*, that the bill of exceptions is sufficiently authenticated and identified, although a better method should have been pursued.

2. **WITNESS:** Father of Deceased: No Objection: Irrelevant Matters: Obvious Facts. Defendant was convicted of the crime of driving an automobile while in an intoxicated condition. The automobile turned over and a young man who accompanied him was killed. At the trial the father of this young man was called as a witness for the State, and it is now urged that the father's testimony related to irrelevant and immaterial matters, and the use of him as a witness was calculated to inflame unduly the minds of the jury against defendant. *Held*, that, no objection having been made to the use of the father as a witness, it cannot be ruled that the trial court erred in permitting him to testify. Besides, the father was a competent witness upon relevant and material matters, and objections to specific parts of his testimony must be judged by the rules applicable to the testimony of witnesses not related to deceased. And, further, the situation at the point of the accident, including the presence of the body of the young man, was a part of the *res gestae*, but proof of the fact that he was a member of the witness's family and that his body was cared for by the undertaker after his death was not necessary to the State's case, yet it cannot be ruled that proof of such obvious facts was reversible error.

3.  ——: ——: Creating Atmosphere: No Objection. Dressing the stage of a criminal trial, and creating an atmosphere unfavorable to defendant, should be avoided, but cannot be held to be reversible error unless challenged during the trial.

4.  ——: ——: Automobile: Intoxicated Driver: Gradation of Punishment: All Facts Connected With Offense. The statute, by

providing a variable punishment from a fine of one hundred dollars to imprisonment for five years, for the operation of a motor vehicle by an intoxicated driver, contemplated that the jury would take into consideration all the facts connected with the crime, and it is therefore proper to show all the attending circumstances, including the fact that the defendant driver was accompanied by a young man who was killed when the automobile turned over.

5. JURY: Separation: Finding of Trial Judge. Even though defendant did not consent to the separation of the jury during a recess in the trial, such separation will not be reversible error if the trial judge fully investigated the matter and affirmatively found that they had not been subjected to improper influences.

6. INSTRUCTION: Automobile: Intoxicated Driver: Upon Public Highway. Although the information charged that the defendant was operating an automobile "upon a public highway" while intoxicated, an instruction which did not require the jury to find that he was driving the automobile "upon a public highway" was not erroneous, because the statute does not specify the place, but only says that "no person shall operate a motor vehicle while in an intoxicated condition, or when under the influence of drugs," and the allegation in the information was therefore surplusage.

7. RES GESTAE: Proof of Intoxication: Presence of Whiskey. In a trial of a defendant charged with driving an automobile while in an intoxicated condition, all the facts and circumstances tending to show, or to support the opinion of witnesses, that he was intoxicated, such as the presence of recently emptied whiskey kegs at the place of the accident, damp spots on the ground where whiskey had apparently just been poured, the smell of whiskey in the air, broken bottles and whiskey in the automobile, are admissible in evidence.

Headnote 1: Criminal Law, 17 C. J. sec. 3441. Headnote 2: Criminal Law, 17 C. J. secs. 3331, 3662; 16 C. J. sec. 1114; Witnesses, 40 Cyc. 2209. Headnotes 3 to 5: Criminal Law: 3, 17 C. J. sec. 3332; 4, 16 C. J. sec. 1114; 5, 17 C. J. sec. 3717. Headnote 6: Motor Vehicles, 28 Cyc. 50. Headnote 7: Evidence, 22 C. J. sec. 559; Criminal Law, 16 C. J. sec. 1114.

Appeal from Nodaway Circuit Court.—*Hon. John M. Dawson,* Judge.

AFFIRMED.

*Wright & Ford* for appellant.

(1)  The testimony of Charles Buie in no way tended to prove the guilt of defendant, nor to establish facts

from which his guilt could be inferred.   His evidence was irrelevant and immaterial, and was calculated to prejudice the jury against the defendant, and the law will presume it had that effect.   State v. Shipley, 174 Mo. 512, 516; State v. Taylor, 118 Mo. 153, 163; State v. Levy, 90 Mo. App. 643, 649.   (2)   The law requires that the jury be kept together unless the defendant consents to the separation.   To allow the jury to separate and mingle with the public generally and then to allow the State to overcome the presumption of improper influence by the affidavits of the jurors that they were not influenced is to deprive the defendant of the protection of the law and to render it a nullity.   State v. Orrick,. 106 Mo. 111; State v. Steifel, 106 Mo. 129.   (3) The jury found the defendant operated an automobile and did so while in an intoxicated condition.   But the jury did not find that the defendant operated the automobile on the public highway.   That issue was not submitted by the instructions.   "The instructions must contain a definition or explanation of the crime charged, in precise and accurate language, setting forth the essential elements thereof."   16 Corp. Jur., sec. 2362, p. 968; State v. Brown, 104 Mo. 365, 370; State v. McCaskey, 104 Mo. 644, 648.   (4)   Instruction 2 purports to define the crime charged in the information, but omits an essential element.   It tells the jury that if they find that the defendant operated an automobile while in an intoxicated condition, they will find him guilty and fix his punishment, etc.   This is not an offense in this State.   To constitute a crime the defendant must operate the automobile upon the public highway.   The instruction omits this element and is erroneous.   16 Corp. Jur., sec. 2362, p. 968; Rahke v. State, 168 Ind. 615; Goldsberry v. State, 66 Neb. 312. (5)   The kegs, containing a small quantity of liquor, discovered in adjoining fields, subsequent to the accident, were in no way whatever connected with the defendant. They were not shown to have ever been in his possession, that he had anything to do with placing them there, or, that he had any knowledge of their existence.   Mere sus-

picion, however strong, is not sufficient to connect a defendant in a criminal proceeding with a criminal agency or instrument.

*Jesse W. Barrett*, Attorney-General, and *Allen May*, Special Assistant Attorney-General, for respondent.

(1)  The purported bill of exceptions, not being included in the clerk's transcript, and although attached thereto by paper fasteners, not authenticated in any manner, nor called for nor referred to as an exhibit attached to said transcript, cannot be considered on appeal, and the case must be determined on the record proper. State v. Graham, 247 S. W. Mo. 194; State v. Griffin, 249 Mo. 624; State v. Bockstruck, 192 S. W. 404.  (2)  The evidence of defendant's condition after the wreck, the condition of the surroundings and defendant's conduct and statements, were admissible as *res gestae* and as cumulative evidence of the charge.  State v. Rodgers, 91 N. J. L. 212; People v. Dingle, 205 Pac. 705; People v. McHugh, 216 Pac. 76; Hart v. State, 105 S. E. 383.  (3) The principal instruction requires the finding of all the elements of the crime as defined by the statutes.  Sec. 27(g) and Sec. 29(c) Laws 1921 (1st Ex. Sess.) 103, 105; State v. Volz, 269 Mo. 194.  (4)  The evidence was abundant to support the verdict.  State v. Dingle, 205 Pac. 705; People v. McHugh, 216 Pac. 76; Hart v. State, 105 S. E. 383.  (5)  There is no prejudicial error in the alleged separation of the jury.  (a)  The point does not appear in the record of the trial, but was raised for the first time on motion for new trial, by affidavits to which contradictory affidavits are filed.  The Supreme Court will not interfere on appeal with the determination of fact by the trial court upon contradictory affidavits.  State v. Taylor, 134 Mo. 109, 138.  (b)  The alleged separation being prior to the retirement for deliberation and, therefore, violative only of Sec. 4026, R. S. 1919, and not of Section 4027, the cumulative showing by the State that the

jurors were subjected to no improper influence, supported by the finding of the trial court, overcomes any adverse presumption of misconduct.  State v. Tarwater, 293 Mo. 273; State v. Schaeffer, 172 Mo. 335; State v. Fairlamb, 121 Mo. 137; State v. Spaugh, 200 Mo. 571, 608; State v. Orrick, 106 Mo. 111, 125.

DAVID E. BLAIR, P. J.—Defendant was convicted of the crime of driving an automobile while in an intoxicated condition.  The jury imposed the punishment at confinement in the penitentiary for two years and six months.  Defendant has appealed.  The statute on which the information is based is Section 27 (g), Laws 1921 (First Extra Session) page 103.

The evidence relied upon to sustain the judgment tends to show the following facts:

About 6:30 on the evening of July 15, 1922, the defendant, in company with one Merle Buie, was driving a Ford automobile upon the public highway near Graham, in Nodaway County, when such automobile was overturned.  Buie was killed, and defendant was found standing in the road beside the car a few minutes afterward. He had been injured and his head was bleeding.  Two whisky kegs and some broken bottles were found nearby. The kegs gave evidence of having been recently emptied. These and the smell of whisky upon defendant's breath and in the local atmosphere are part of the evidence relied upon to prove the intoxicated condition of defendant.  Witnesses also gave their opinions that defendant was intoxicated.

Just before the accident a witness saw a Ford automobile moving west on the road in front of his farm and thereafter heard what he thought was a blow-out. Upon investigation, he found the same automobile wrecked as above stated.  The same automobile was seen going in the direction of the wreck by another witness a short time before.  When this witness first saw it he thought it was moving at a rate of thirty or thirty-

303 Mo. Sup.—2.

five miles an hour. The automobile was swerving dizzily from one side of the road to the other.

The defendant did not testify. He does not here press the point, made below, that no case was made to go to the jury. We think the evidence was sufficient to make a showing of the intoxicated condition of the defendant at the time and otherwise sufficient to make out a case for the consideration of the jury.

I. We are met at the outset by the suggestion of the learned Attorney-General that there is nothing before us except the record proper. It is said that the purported bill of exceptions is not included in the transcript certified by the circuit clerk, has not been authenticated in any manner, nor called for in said transcript, nor referred to as an exhibit attached to said transcript, and therefore it cannot be considered by us. He cites and relies upon State v. Graham, 247 S. W. (Mo.) 194; State v. Griffin, 249 Mo. 624, 155 S. W. 432, and State v. Bockstruck, 192 S. W. (Mo.) 404.

Bill of Exceptions.

The transcript of the record entries contains the following: "Comes now the defendant and presents his bill of exceptions which are examined by the court, and same are approved and ordered filed and made a part of the record in this cause, which is accordingly done." This entry was made by the trial judge in open court on May 12, 1923. The above recital of the transcript is followed by the certificates of the clerk that said transcript "is a true, full and complete transcript of all the records and proceedings of the Nodaway County Circuit Court in the cause therein mentioned, *together with a true and complete copy of the original bill of exceptions,*" etc. (Italics ours.)

Said transcript comes to us attached by metal clips to a document entitled "Bill of Exceptions" in the case of State of Missouri v. Jesse Hatcher in the Circuit Court of Nodaway County, Missouri, at the regular September Term, A. D. 1922. . The name of the trial judge and

the prosecuting attorney have been filled in with pen and ink, apparently in the same handwriting. The transcript and the purported copy of the original bill of exceptions were both filed in this court on October 4, 1923.

It would doubtless have been better if the circuit clerk had used in his certificate, after the phrase ''together with a full and complete copy of the original bill of exceptions,'' the words ''hereto attached,'' or words of similar import; or if he had made and attached to the bill of exceptions his separate certificates of true copy of the original bill of exceptions previously approved and ordered filed by the trial judge, or if he had bound the two documents together securely. However, no one examining the transcript and the purported bill of exceptions, insecurely, but at least physically, attached to it, under the circumstances above detailed, could have the slightest doubt that such purported bill of exceptions is actually the bill of exceptions referred to in the record entry made by the trial judge.

In the cases cited by the learned Attorney-General the recitals in the clerk's certificate were not as full as they appear in the case at bar. In the Graham Case the transcript contained the recital of the approval and filing of a bill of exceptions. We quote from the opinion: ''The transcript does not include the bill of exceptions, nor make any further reference to it.'' Here the clerk certified that ''the above and foregoing is a true, full and complete transcript . . . together with a true and complete copy of the original bill of exceptions.'' In the Graham Case the clerk apparently made no certificate of any sort concerning the correctness of any bill of exceptions or copy thereof.

In the Griffin Case the purported copy of the bill of exceptions was not authenticated by the signature of the trial judge. The same situation is shown to have existed in the Bockstruck Case. Under the circumstances in the case at bar, above outlined, we must hold that the bill of exceptions is sufficiently authenticated and identified.

II.   The first assignment of error is that the trial
court improperly admitted the testimony of Charles
Buie and erred in refusing to strike out said testimony
on defendant's motion.  The assignment made
here appears to be based upon the proposi-
tion that the use of the father of deceased as
a witness, when his testimony related to ir-
relevant and immaterial matters, was calculated to in-
flame unduly the minds of the jury against defendant.

Witness:
Father of
Deceased.

An examination of the bill of exceptions discloses
that no objection was made to the use of Charles Buie
as a witness for any reason whatever and further dis-
closes that only three specific objections were made to
questions asked him by the State.  The first objection
was lodged against a question concerning the members
of the family of the witness, which included the deceased's
son.  The objection was that "it is incompetent and ir-
relevant."  The second objection made was directed to
the question concerning when witness had seen deceased
that day.  No specific ground of objection was stated
and the objection was therefore too general to be con-
sidered here.  The final objection was lodged against a
question and answer showing that the last time wit-
ness saw the deceased on the day of the accident was
at the undertaking office.  After this question had been
asked and answered the following occurred:

"MR. WRIGHT:  I object to that as highly prejudicial.

"THE COURT:  Objection sustained.

"MR. WRIGHT:  And ask that it be stricken from the
record.

"THE COURT:  No.

"To which action of the court in overruling the mo-
tion the defendant then and there at the time excepted,
and still excepts."

This witness had previously testified without objec-
tion of any sort that he had seen his son at the under-
takers.  After the witness had finished his testimony,
the following occurred:

"Mr. Wright: I think I ought to ask that that be stricken out, for the reason that none of it so far has anything in the world to do with this case, and is incompetent.

"The Court: The motion to strike out overruled.

"To which action of the court in overruling said motion the defendant then and there at the time excepted, and still excepts."

The final motion apparently was directed to the whole of the testimony of the witness. There does not appear any objection whatever to the use of Charles Buie as a witness, and for that reason we cannot consider whether the trial court erred in permitting him to testify. He was clearly a competent witness upon relevant and material matters. Objections to specified parts of his testimony must therefore be judged by the same rules which are applicable to the testimony of a witness not related to the deceased.

The fact that Merle Buie was killed in an accident appeared from the testimony of other witnesses and was even the subject of cross-examination by counsel for defendant. That fact could not well have been kept from the knowledge of the jury. The situation at the point of the accident, including the presence of the body of Merle Buie, was all part of the *res gestae,* as we will point out hereafter. Proof of the fact that deceased was a member of the family of the witness and that witness saw his body at the funeral parlor was not necessary to the case, but we are not prepared to say that the trial court committed reversible error in permitting obvious facts to be proven, to-wit, that deceased was a member of some family and that his body was necessarily cared for after his death.

The purpose of the State in using deceased's father may have been to dress the stage. Trial courts should carefully guard defendant's rights during the trial and not permit the occurrence of events during the course of the trial which are calculated to prejudice the jury un-

duly against the defendant and thus deny him a fair and impartial trial. But even though the use of this witness was for the sole purpose of creating an atmosphere unfavorable to defendant, we cannot convict the trial court of error in a matter not challenged during the trial.

We think it was proper to show all the facts connected with the crime charged, including the death of Merle Buie. It must have been contemplated by the Legislature that the jury should take all the facts into consideration in assessing the punishment; otherwise, the same punishment would have been provided in all cases. The act (Sec. 29 (c), Laws 1921, First Extra Session, p. 105) provides for punishment from five years in the penitentiary down to a mere fine of $100. The offense denounced is the operation of a motor vehicle while the driver thereof is in an *intoxicated condition. The jury is authorized to make the punishment fit the crime committed. Conceivably the minimum punishment might properly be applied where the intoxicated driver was slowly driving his automobile, unoccupied by any other person, along an unused highway. On the other hand, the maximum punishment would appear to be more appropriate where the motor vehicle was being operated at a high rate of speed over a thoroughfare crowded with school children or being operated at such speed while a child was a passenger in such a vehicle. The gravity of the offense depends to a large extent upon the facts attending and resulting from its commission. It was, therefore, proper to show all the attending circumstances, including the fact that Merle Buie was killed.

III.  Error is assigned because the trial court permitted the jurors to separate, during the noon recess of the trial and before the case was finally submitted to them, without defendant's consent to such separation. Section 4026, Revised Statutes 1919, authorizes such separation in felony cases, except capital cases, "with the consent of the prosecuting attorney and the defendant." The affidavit of the prosecuting attorney was to the effect that defendant

*Separation of Jury.*

and his counsel were present and observed the proceedings and made no objection when the trial judge announced to the jurors that they would be permitted to separate during the noon recess and gave them the caution required by said Section 4026. The affidavit of defendant's counsel is that his attention was not called to the question of separation and neither he nor defendant consented thereto. Counsel further says he first heard of the separation on the day following the receipt of the verdict of the jury.

Regardless of whether defendant and his counsel, or either of them, knew the trial judge was permitting the jurors to separate, and failed to object, the assignment must be disposed of adversely to defendant's contention for reasons following. The affidavit of defendant stated:

"That during said period of time said jury remained separated, intermingled with divers and many people and were in and about many and divers places, resorts and eating houses; that the charge for which the defendant was on trial and the evidence theretofore introduced was, during said period of time, freely and openly discussed at such places in the presence of certain of said jurors; that said jury commingled with a large number of persons who were witnesses on behalf of the State and highly prejudiced against the defendant and the charge on which he was being tried and which charge and the evidence theretofore introduced by the State was, in the presence of certain of said jurors, discussed and commented upon."

After the motion for new trial was filed, the prosecuting attorney procured and filed identical affidavits from each of the individuals who had composed the trial jury. Such affidavits of the jurors were framed to meet, and we think did fully meet, these charges. It is unnecessary to set out the substance of the jurors' affidavits. The matter was fully presented to the trial judge and his action in overruling the motion for new trial demonstrates that he found the issue of fact against defend-

ant's contention and affirmatively found that said jurors were not subjected to improper influences during their separation. In such case, separation without defendant's consent is not reversible error. [State v. Tarwater, 293 Mo. 1. c. 290 and cases cited; State v. Schaeffer, 172 Mo. 335; State v. Fairlamb, 121 Mo. 137.] In the case of State v. Schaeffer, supra, it was held that affidavits of the sheriff and his deputy and of each of the jurors were sufficient to overcome the presumption that the jury was tampered with. The assignment is overruled.

IV. It is next contended that Instruction 2 is erroneous because it did not require the jury to find that de-

Instruction: Upon a Public Highway.

fendant was operating an automobile *upon a public highway,* as charged in the information. The information did so charge, but the italicized words are not found in Section 27 (g), Laws 1921, First Extra Session, page 103. The subsection in question reads as follows:

"No person shall operate a motor vehicle while in an intoxicated condition, or when under the influence of drugs."

Said act does not specify the place where the motor vehicle shall be operated, in defining the offense. The information charged that the act was committed on the public highway. While the evidence so showed, the trial judge properly treated the allegation as surplusage and the proof as unnecessary. The instruction criticized was drawn in the language of the statute and was sufficient without requiring a finding that the vehicle was driven upon a public highway. [State v. Miller, 93 Mo. 263; State v. McCord, 237 Mo. 1. c. 246.]

V. The final assignment of error in defendant's brief is that the trial "court erred in admitting the evi-

Res Gestae: Proof of Intoxication.

dence relative to the discovery of kegs in adjoining fields, and erred in admitting the evidence of what those kegs contained." This assignment is also without merit. As soon as people, living in the neighborhood, reached the scene

of the accident, they smelled whisky and found damp spots where whisky had apparently just been poured upon the ground. Two nearly-empty whisky kegs were found in the field immediately adjacent. They were shown not to have been there very shortly before. Each keg bore evidence of having been recently emptied, except for a little whisky which was found remaining therein. Broken bottles were also found there. All these facts were circumstances tending to show that the kegs and bottles had been in the automobile when it overturned. The presence in the automobile of intoxicating liquor is a circumstance tending to show that defendant had been drinking such liquor. The means of becoming intoxicated were thus afforded. The fact of intoxication is ordinarily a matter of opinion which must be shown by men not expert in such matters. Surrounding facts and circumstances may be shown to the jury, not only to support the opinions given by the persons who saw defendant at the time and testified concerning his intoxicated condition, but also to enable the jurors to draw their own conclusions upon that point from all the attending facts and circumstances. The partially and evidently hastily-emptied whisky kegs, the broken bottles, the wet places upon the ground, reeking with fumes of whisky, were part of the *res gestae* and competent and material evidence on the question of defendant's intoxication. These facts in connection with the opinions of eye-witnesses as to defendant's intoxicated condition, as well as the evidence of the whisky smell upon his person and his manner of driving the automobile, shortly before it was overturned, were all relevant and material on the question of defendant's intoxicated condition. The jury was entitled to all such facts in determining whether defendant was operating his automobile while in an intoxicated condition.

Defendant has cited no cases to this assignment. The learned Attorney-General has cited four cases from other jurisdictions, which tend to support the views above

announced, to-wit; State v. Rodgers, 91 N. J. L. 212, 102 Atl. 433; People v. Dingle, 205 Pac. 705; People v. McHugh, 216 Pac. 76, and Hart v. State, 105 S. E. 383. In the last case cited, the court said:

"In the trial of such a case, evidence tending to show that the operator of the vehicle had whisky about his person, or in the vehicle with him, is relevant, being a circumstance for consideration by the jury upon the issue as to the operator's use of intoxicating liquors."

It is said in 22 Corpus Juris at page 470: "Facts or circumstances attendant upon the main fact in issue may be shown as part of the *res gestae,* although they involve no idea of action."

The evidence complained of was clearly admissible.

VI. The above disposes of all the assignments relied upon by defendant for reversal. Finding no reversible error in the record, it is ordered that the judgment be affirmed. All concur.