**STATE of Missouri, Plaintiff-Respondent,**

v.

**Oren Tempelton EDMONDS, Defendant-Appellant.**

No. 33846.

St. Louis Court of Appeals,
Missouri.

May 25, 1971.

Williams & Rush, Paul E. Williams, Bowling Green, for defendant-appellant.

James Millan, Pros. Atty., Bowling Green, for plaintiff-respondent.

SMITH, Commissioner.

Defendant was convicted by a jury of driving while intoxicated and fined $100. He appeals, raising only the question of whether the court erred in refusing to allow a nonexpert witness to give his opinion that defendant was not intoxicated.

The State's case consisted solely of the testimony of the state trooper who testified to defendant's erratic driving, that he was unsteady on his feet, that his eyes were watery, and that he had the smell of intoxicating beverage on his breath. The trooper also testified that immediately after being stopped defendant spontaneously remarked, "I knew I shouldn't have been driving it." The trooper, over objection, gave his opinion that defendant was intoxicated. He conducted no tests on defendant, chemical, physicial, or of coordination.

Defendant admitted driving the vehicle at the time and place charged, and defended solely on the basis that he was not intoxicated.

In support of this defense he adduced testimony that he is on medication to control tuberculosis, that he had taken such medication on the night in question and that the medication had made him dizzy. He did not deny the erratic driving, but stated he did not remember that he had driven erratically nor did he remember making the statement attributed to him. He testified that when he was twenty-one or twenty-two years old [1] he had had a severe illness which left him with a permanent unsteadiness of gait and lack of balance. Defendant admitted that from 4:00 p. m. on the date of the arrest until 8:00 p. m. he had consumed five cans of five per cent beer. From about 6:00 p. m. until about 10:00 p. m. he had been at a party. He testified he ate about 8:00 p. m. and had nothing to drink thereafter. He left the party at approximately 10:00 p. m. and the arrest was made at 10:20 p. m. while defendant was driving home. There is no evidence of any stops by defendant after leaving the party and before his arrest and defendant's testimony would indicate none were made.

The court's ruling on which defendant premises error arose during the testimony of defendant's friend of twelve years, who was with him at the party. Because the court's ruling was based upon lack of foundation we must set forth at some length the pertinent testimony leading up to the ruling.

"Q How long have you been acquainted with Oren T. Edmonds? A Oh, almost twelve years. Q In that length of time have you known him at work? A Yes, sir. Q Have you known him socially after hours? A Yes, sir. Q * * * I will ask you if you were with him just before he was arrested? A He was at the party we was having. Yes, I seen him. We had dinner together. Q Let me ask you about what time was it when you first saw him on that evening? A Oh, I would say approx-

---

1. Defendant was fifty-seven at the time of trial.

imately around 6:00 o'clock. Maybe a little later. Q And then were you with him continuously up to the time that he left the party? A Well, there was several people he mingled with off and on. I seen him several times during the party and talked to him. Q How many people were at this party in round figures? A Oh, probably fifteen adults and that many children. * * * Q Did you notice anything unusual about his behavior either during the first part of the evening or the last part of the evening? A No, I did not. * * * Q Was there a meal served at this party? A Yes, there was. Q About what time was that? A Approximately 8:00 o'clock. Q Did you see him during the meal? A Yes. Q Was he drinking anything at that time? A No. Q Did you see him after the meal? A Yes. Q Was he drinking anything at that time? A I never seen him with anything. * * * Q Were you in the courtroom when Trooper Gaines testified that he was unsteady on his feet on this occasion? A Yes, I was. Q Have you been around Oren Edmonds long enough and observed him enough to observe anything about his general steadiness on his feet? A As long as I have known him he has been unsteady on his feet. You see him walk you think he is going to fall pretty regular. Q Is he unsteady on his feet when he hasn't had anything to drink? A Yes, he is. Q Have you been around people who have had quite a lot to drink? A Yes. Q People that have had a little and quite a bit and an awful lot, you have been around people in all stages of drinking, is that a fair statement? A Yes, I have. Yes, it is. Q Did Mr. Edmonds leave the party before you did? A Yes, he did. Q Did you see him just before he left? A Shortly before he left, yes. Q By shortly, are you speaking in terms of like five minutes, ten minutes, something of that kind? A Probably five to ten minutes I imagine. * * * Q Answering yes or no, do you have an opinion as to whether or not the defendant was drunk when he left the party? A Yes, I have an opinion.

Q Okay. Do not answer this question until Mr. Millan has had a chance to object. In your opinion was he drunk? Don't answer. MR. MILLAN: Now I object, your Honor, on the ground that this witness isn't qualified to answer. THE COURT: I am going to sustain the objection at this time on the ground that sufficient foundation hasn't been laid. Q All right. Mr. Wundelich, do you drink on occasion? A Yes, sir. Q Have you been around a lot of people who did at one time or another? A Yes, sir. Q In your observations do intoxicated people have certain symptoms that when you see these symptoms you are inclined to say he is drunk? A Some people do I would say, yes. Q Well, are these symptoms the standard ones such as staggering and slurred speech and that type thing? A Yes, sir. * * * Q * * * have you ever watched somebody get drunk? A Well, drink with people, yes. And they have got pretty well—I would think intoxicated, yes. Myself, too. Q Over how many years would this experience reach with people in general on intoxication? A Oh, probably eighteen—sixteen, eighteen years. Q I will ask you again whether or not in your opinion, and don't answer, whether or not in your opinion this defendant was drunk when he left the party on this particular night? MR. MILLAN: The State makes the same objection. THE COURT: The Court will make the same ruling at this time. Sustained."

From the objection made and the court's ruling we are unable to tell whether the ruling was based on the witness' lack of qualification as an expert or upon a lack of sufficient evidentiary basis to express an opinion.

 It is true that the admission or exclusion of opinion testimony is largely within the discretion of the trial court. Anderson v. Robertson, Mo.App., 402 S.W. 2d 589 [8]. Judicial discretion is the option the trial judge has in doing or not doing a thing which cannot be demanded by a litigant as an absolute right. Such discretionary rulings are reviewable to determine

abuse. Abuse occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. We presume that a discretionary ruling is correct and cast the burden of showing abuse upon appellant. Anderson v. Robertson, *supra*, [1, 2, 3, 4]. Under the circumstances here we find the trial court abused its discretion in rejecting the proferred testimony.

■ It is clear that a lay or non-expert witness may testify as to his opinion of the intoxication of another. The fact of intoxication is by its nature ordinarily a matter of opinion which must be shown by men not expert in such matters. State v. Hatcher, 303 Mo. 13, 259 S.W. 467 [9, 10]; State v. Revard, 341 Mo. 170, 106 S.W.2d 906 [7, 8]; State v. Powell, Mo., 306 S.W. 2d 531 [1]; State v. Mayabb, Mo., 316 S.W.2d 609 [5, 6]; Limbaugh v. Forum Lunch Co., Mo.App., 258 S.W. 451 [5, 6]. Normally, where the witness is testifying that the person involved was intoxicated the opinion must be preceded or at least supported by the evidentiary facts of conduct or appearance upon which the witness bases his opinion. We have found no case in Missouri on what evidentiary facts must appear when the witness is testifying to non-intoxication. We believe, however, that the evidentiary rules dealing with opinion testimony of sanity or insanity are equally applicable to testimony of sobriety or drunkenness. A lay witness when giving an opinion that a person is of unsound mind must state the conduct or actions upon which he founds that opinion in order that the jury may determine whether the abnormalities testified to justify the opinion. Such factual basis is not required where the witness expresses an opinion of sanity, for there the opinion is based upon the absence of abnormalities. The opinion is not based on concrete facts demonstrating insanity but on the absence of such facts. See In re Bearden, Mo.App., 86 S.W.2d 585 [7, 8]. The same is true in the area

of intoxication. An opinion of intoxication is based upon actions and appearances not normal, whereas an opinion of non-intoxication is based upon the absence of such actions and appearances. Here the witness testified that he noticed nothing "unusual about his [defendant's] behavior."

■ The witness' testimony reflects that he was in off-and-on contact with defendant for some four hours, that he talked with him "several" times, that he had known defendant socially and in his employment for some twelve years, that he had dinner with him on the night of the arrest and that he saw defendant within a few minutes before defendant left the party. He further testified to his experience in being around intoxicated persons. The testimony reveals that the witness had the experience to give an opinion, sufficient contact with defendant on the night in question to give an opinion, and that he was sufficiently acquainted with defendant to know what was normal conduct for defendant. This furnished an adequate foundation for the opinion sought.

Defendant's only defense was that he was not intoxicated. The State's case to a very real degree was based upon the opinion of the trooper that defendant was intoxicated. Defendant was entitled to have the jury consider the opinion of his witness of non-intoxication. The weight of such opinion was of course for the jury. We hold the trial court abused its discretion in sustaining the objection.

The judgment is reversed and the cause remanded for new trial.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded for new trial.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not sitting.