**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Richard J. SCATURRO, Defendant-Appellant.**

**No. 35179.**

Missouri Court of Appeals,
St. Louis District,
Division 1.

April 30, 1974.

James S. Collins, II, Whalen, O'Connor, Collins & Danis, St. Louis, for defendant-appellant.

Thomas W. Shannon, Pros. Atty., Kenneth S. Kochmann, Asst. Pros. Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Appellant was convicted of Driving While Intoxicated in violation of Sec. 564.-440 RSMo 1969, V.A.M.S., after trial to the court without a jury and after his motion for new trial was overruled he was sentenced to pay a fine of $125.00 and court costs. This appeal followed.

In this Court the appellant contends that the evidence was insufficient to support a finding of guilt [1] and that a medical doctor should not have been permitted to read from a hospital record an entry wherein a resident physician noted "appears inebriated." We find no error and therefore affirm.

Briefly stated there was substantial evidence to support a finding by the trial court that at approximately 12:45 a. m. on November 13, 1972, appellant was operating a motor vehicle in an eastwardly direction over and along Cook Avenue at or near its intersection with Sarah Street in the City of St. Louis, Missouri. That at the same time and place Craig Feldmeier, a St. Louis Police officer, was operating a police vehicle southwardly on Sarah Street. That appellant in the motor vehicle he was operating violated a stop sign at the intersection of Cook and Sarah and drove the motor vehicle into the side of the police vehicle being operated through the intersection in a southwardly direction on Sarah Street by Officer Feldmeier and then continued southwardly on Sarah Street until he collided with another motor vehicle which was parked along the curbline of Sarah Street and then came to a stop. Officer Feldmeier alighted from the police vehicle, approached the motor vehi-

cle with appellant therein, and from his observations of the appellant formed the opinion that the appellant was in an intoxicated condition. Two other police officers arrived on the scene, observed the appellant and they too concluded that he was in an intoxicated condition. Appellant was placed under arrest for driving while intoxicated, advised of his rights and the Missouri Implied Consent Law and he consented to take the Breathalyzer test. He was thereafter conveyed to the St. Louis City Hospital where he was diagnosed as a hemophiliac and he was then conveyed to the Jewish Hospital of St. Louis where he was treated by a Dr. Robert Frye, an intern in the emergency room, for a laceration on the chin. Dr. Frye formed the opinion that appellant was intoxicated when he saw him in the emergency room of the hospital.[2]

An appellate court does not weigh evidence or judge the credibility of the witnesses, but determines only if there is substantial evidence to support the verdict of the jury or of the trier of the facts and a verdict so supported will not be disturbed on appeal. State v. Campbell, 292 S.W.2d 297, 299 [5] (Mo.1956); State v. Hicks, 438 S.W.2d 215, 219 [5] (Mo.1969). Substantial evidence means evidence from which the trier of fact reasonably could find the issue in harmony therewith. State v. Taylor, 445 S.W.2d 282, 284 [4] (Mo. 1969).

Appellant argues that evidence of his guilt is purely circumstantial. We hold otherwise. Circumstantial evidence has been defined by the courts of this State as proof of facts and circumstances from

1. Appellant's first contention, to-wit: "The trial court erred in finding the defendant guilty as the verdict is against the weight of the evidence as the state did not prove beyond a reasonable doubt that defendant was driving while intoxicated and further the case against defendant was entirely circumstantial and the state did not successfully rule out every possibility except that of defendant's guilt," did not preserve anything for review by this Court. State v. Campbell, 292 S.W.2d 297,

298 [1, 2] (Mo.1956). However, we shall view these contentions as presenting the question whether the evidence is sufficient to support a conviction or driving while intoxicated.

2. While there was evidence in the case of a blood alcohol test showing .25% blood alcohol the trial court stated prior to announcing its finding that he was going to exclude the results of that test and no issue has been made of the results of the test on this appeal.

Connect

accccording

which a jury may infer other connected facts according to common experience of mankind. State v. Blankenship, 330 Mo. 792, 50 S.W.2d 1024, 1026 [2] (1932). Direct evidence is evidence which, if believed, proves the existence of facts in issue without inference or presumption. State v. Cox, 352 S.W.2d 665, 670 [3] (Mo.1961). The Missouri courts hold that evidence obtained by any one of the five senses is direct evidence. State v. Dalton, 23 S.W.2d 1, 6 [15] (Mo.1929). It has long been settled that opinion evidence as to the fact of intoxication may be given even by a layman. State v. Edmonds, 468 S.W.2d 685, 688 [6] (Mo.App.1971); 7 Am.Jur.2d, "Automobiles and Highway Traffic," § 331, p. 874; 3 Charles E. Torcia, Wharton's Criminal Evidence, § 607 (13th ed. 1972). The cases are legion which hold that evidence to the extent adduced by the State in this case through the testimony of the police officers who had opportunity to observe and form an opinion as to appellant's intoxicated condition, together with that of Dr. Frye, support a conviction of Driving While Intoxicated. State v. Persell, 468 S.W.2d 719, 721 [1] (Mo.App.1971); and cases in 4A Mo. Digest, Automobiles, ▆ [6]. We rule this point against appellant.

Appellant's final point is that the trial court erred in permitting Dr. Frye, over objection, to read from the hospital record an entry made by another Doctor that the appellant "appears inebriated." The thrust of his argument is that the word "appears" constitutes this entry a "conclusion" and not a statement of fact and further that the qualification of the doctor making this entry to form such an opinion was not established in the record prior to admission of this evidence.

During the trial, and when Dr. Frye was on the stand as a State's witness, counsel for the appellant, during cross-examination, had the records of the Jewish Hospital of St. Louis marked as Defendant's Exhibit 4 and inquired of the doctor whether he recognized any of the writing on the emergency room records and the records

of the first day of hospitalization as being his. Dr. Frye responded that the only writing in that report by him was that describing the laceration of the chin; that the rest of the report was filled in by the emergency room and followed thereafter by a written report of the medical doctor. Attention was later directed to the "third page"—"What the history physical examination of progress note means, what is that report for and how is it made up?" Dr. Frye responded that it was "a residence (sic) report, the medical resident," which would have been made up "on the floor" immediately after appellant's arrival there. He identified the resident at that time as a Dr. Englebert, a first year medical resident, whose duty it was to take a history from the patient relative to the nature of his injuries, how they were caused and note his condition. Referring then to the doctor's notes—i. e., those made by the resident, Dr. Englebert, and not Dr. Frye, appellant's counsel inquired:

"Q. And, the doctor's notes on that page there as to the patient's ability to give a history is what?

A. Yes, he did.

Q. What did he say?

A. Patient is unable to give history."

Attention was then directed to some past medical history and an entry that patient was unable to give a history which Dr. Frye stated was probably entered after appellant arrived "on the floor."

Almost immediately thereafter, when counsel for appellant announced that he had no further questions, the Assistant Prosecuting Attorney, on re-direct examination made the following inquiry:

"Q. Now, you were asked doctor to read statements out of here with reference to the patient—he was unable to give history. I presume that that's what that meant. Will you read the next following sentence. (sic)

A. On the chief complaint, it says—'Patient is unable to give history, he appears inebriated and ———' "

At this point counsel for the appellant interrupted and interposed an objection "to 'what appears' for the reason that that is a conclusion by the doctor—on the doctor's part." He further complained to the trial court that there was no testimony shown as to the competency of that doctor to give an opinion. The court's response was that he had opened the door to that report and the State was entitled to offer anything in the report once he opened the door.

■ In his argument appellant's contentions are that the word "appears" constitutes the evidence a conclusion and not a statement of fact. As we view the entry, it is an opinion, and like all opinions, conclusory in nature, but based upon an observation made by the doctor at the time and admissible as such.

■ He next argues that there was no showing that the Doctor was qualified to make such a judgment. As we have stated heretofore, even a layman may form an opinion and express it with respect to intoxication, provided that a basis for his opinion is laid. State v. Edmonds, *supra*. Here, appellant sponsored the expertise of the same absent doctor to state that appellant was unable to give a history. He prevailed upon Dr. Frye to read this entry from the hospital record although Dr. Frye testified that it was not in his hand-writing and was made by Dr. Englebert. It is quite evident that what took place was that appellant's counsel had the witness read that portion of a hospital record entry which he thought was helpful to him and then omitted a following portion which would explain why appellant was unable to give a history. The exhibit itself was never offered nor received into evidence and except for those portions read into the record we are unable to determine whether the phrase "he appears inebriated" followed immediately that portion of the record read by appellant's counsel and as a phrase of the same sentence, or whether it was in a separate entry on the same page

of the exhibit. Where one party brings into court and reads into evidence certain portions of a hospital record without any reservation of the right to object to other portions thereof and thus affirms the admissibility of the hospital record, he cannot thereafter object to his opponent's offer of remaining portions of the hospital record which are relevant and explanatory of the portions already read into evidence by the party first sponsoring the hospital record. Dorn v. St. Louis Public Service Co., 250 S.W.2d 859, 865 [2] (Mo.App.1952). This has been referred to as the "doctrine of curative admissibility." Young v. Dueringer, 401 S.W.2d 165, 167 [1] (Mo.App. 1966); Sigman v. Kopp, 378 S.W.2d 544, 547 [1, 2] (Mo.1964). We hold that any error in admitting the entry in the hospital record by Dr. Englebert with reference to the condition of appellant when seen by the same doctor "on the floor" of Jewish Hospital was obviated under the doctrine of "curative admissibility" because the record in this case demonstrates that it was invited and waived by appellant's use of the hospital record entries without a proper foundation having been laid and was merely explanatory of evidence already adduced from the same record by appellant. We rule this point against appellant.[3]

Appellant included among his "points Relied On" a request that if his contentions were well-founded that after the judgment was reversed he be discharged. This has no place in this portion of the brief. Nevertheless, since we are affirming the judgment of the trial court we necessarily cannot grant his request.

We have examined those matters which we are required to consider pursuant to Rule 28.02 VAMR and find them to be sufficient and in proper form.

The judgment of the trial court is affirmed.

DOWD, C. J., and SIMEONE and WEIER, JJ., concur.

---

3. See Beck, Evidence—Curative Admissibility in Missouri, 32 Mo.L.R. 505 (1967).