STATE of Missouri, Respondent,

v.

James A. MICHAELS, Appellant.

No. 36636.

Missouri Court of Appeals, St. Louis District, Division Four.

Aug. 10, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied Dec. 13, 1976.

Irl B. Baris, St. Louis, for appellant.

Courtney Goodman, Jr., Pros. Atty., George F. Meyer, Jr., Asst. Pros. Atty., Clayton, for respondent.

ALDEN A. STOCKARD, Special Judge.

Appellant James A. Michaels was found guilty by a jury of operating an automobile while intoxicated, a misdemeanor, and was fined $500. We affirm.

■ We first note that a representative of the Prosecuting Attorney for St. Louis County did not file a brief or appear before this court at oral argument of this case. We recognize that under the present Supreme Court Rules there is no penalty for such failure, *Shephard v. Hunter*, 508 S.W.2d 234 (Mo.App.1974), but the practice has repeatedly been condemned by the courts. *Superior Loan Corporation of Buffalo v. Robie*, 476 S.W.2d 144 (Mo.App. 1972); *McCutchen v. Moore*, 494 S.W.2d 684 (Mo.App.1973). These citations are to civil cases where only private rights were involved, but this is a criminal case and it ill behooves a public official to fail to see that the State is adequately represented throughout the entire proceedings.

Appellant admits in his brief that for "purposes of this appeal * * * the State's evidence made a submissible case."

Appellant first asserts that the trial court erred "in failing to make any inquiry as to irregularities in the jury, including a private investigation by one juror and prejudicial newspaper publicity * * *."

*The Juror Incident*

On the second day of trial, in response to an inquiry from appellant's counsel, the court stated: "At the noon recess, Juror No. 9 * * * came up and * * * said he had written down some items for the direction of the jurors in their work and that he had given it to the bailiff and asked the bailiff to have it typed up. It is handwritten on a piece of scratch pad starting with P–9 which evidently refers to paragraph 9, an item which, if it is agreeable, we can have the court reporter copy into the record." Counsel for appellant suggested that the paper be made an exhibit and it was marked as "Court's Exhibit No. 1." What was written on the paper was not copied into the record. The trial court stated that it had "secured this item from the bailiff and exhibited it to counsel for both the State and defendant," and the court then commented as follows: "[I]t appears to be some type of notation and copied by the juror from some manual in regard to qualifications for jury service, with the inference drawn by the Court—well, maybe we shouldn't draw any inference. It apparently relates to qualifications for jury service in some form." The court then advised counsel that it had "told the juror at the time that jurors were not permitted to take notes or write matters and were not permitted to submit written suggestions to other jurors; that they could under proper precautions, ask questions of the Court out of the hearing of the rest of the jury, [and that the court would] take the matter up with him before we resumed, after the noon recess."

Counsel for appellant indicated that he was concerned about the juror "apparently [feeling] the necessity of doing some independent research," and he requested "an investigation be made at this point, as to what activities this juror has engaged in with reference to any independent research as to what the law is or should be." The court commented: "This appears to be entirely unrelated to any issue in the present lawsuit and it would be the Court's feeling before we reconvene, the Court will instruct the juror that he is to be guided by the evidence he hears from the witness stand and the instructions of the Court; that he is not to undertake any writings either to himself or to the other members of the jury. At the conclusion of the case, if it is pertinent, we can examine the juror as to any collateral activities. There has been no evidence of any such before the Court at this time other than this apparently a copy of some item, apparently related to jury service and designated 'Federal Code of J.P.'" Counsel for appellant again stated that his

concern was that "the juror is attempting to glean some outside knowledge of the law," and he expressed the view that "to instruct the juror that he cannot put anything in writing to be distributed to other members of the jury, is not sufficient," but that the juror should be instructed that he "cannot communicate in any way with the jurors concerning any of this independent knowledge." Counsel also referred to what he characterized as "this research which has been reduced to writing." The court interrupted to say that it did not know "if you could categorize this as research," and further commented: "For the moment at least, it is the Court's feeling rather than highlighting it in any manner with this particular juror, it would be well to proceed and then if pertinent, if at all pertinent, later to take the matter up and see if there has been any activities performed outside of the scope of the evidence and instructions. The Court's reason for not doing it at this time is not to highlight the matter with this particular juror at this time. In the Court's discretion, we think the better procedure in view of the fact that we regard it, at least at this moment, a rather minor item, to explore the matter at a later date and not highlight, not to run the risk of highlighting, or getting the matter out of context."

The exhibit is not before us. Counsel for appellant has advised this court that the exhibit apparently has been lost.

### The Newspaper Incident

Immediately before the Instructions to the jury were read, counsel for appellant offered for identification a copy of the St. Louis Globe Democrat for June 20, 1974. He then advised the court that he had observed "one juror in this case reading the Globe Democrat," but that he did not know what article the juror was reading. Counsel then called the attention of the court to four articles in the paper as follows: (1) An article on page one entitled "60 percent of drunk drivers still on streets," (2) An article on page 3–a entitled "Woman, 76, Killed by car; driver allegedly drunk." and two articles on page 10–a entitled (3) "Wehrle case

thrown out; test results barred," and (4) "More women patrol officers recommended." Counsel admitted that the article on page 3–a was "a factual report of an accident that took place in Caseyville, Illinois," and that he had "no quarrel with the newspaper printing it," but he considered it "as an unfortunate incident being in the newspaper today." He added that he was "particularly concerned" about the article on page one which was "basically in the nature of an interview and statements" made by the prosecuting attorney who "ought to [have known] of the trial of this case." Counsel stated that this "is a matter this court ought to investigate to determine the surrounding circumstances as to the giving of an interview and making of such statements which can have a prejudicial effect upon cases pending and prejudicial effect upon the system of justice generally." Appellant's counsel moved "for a mistrial in this case and ask[ed] the Court to conduct an investigation," and if the court found this publication "was deliberately placed by the prosecuting attorney's office," the charges be dismissed. Appellant also requested the court to "determine precisely the extent to which the jurors have been exposed to these articles."

The court stated: "I will reserve ruling on your motion for mistrial at this time," and it further commented: "of course the articles in question, while they deal with the general subject of driving while intoxicated, are neither the first nor the last that have appeared in any of the papers, local, national or otherwise, and there are almost, if not daily, frequent news articles dealing with the subject matter. I don't think, per se, the printing of articles on the subject of driving while intoxicated is all that unusual however. Under the circumstances we will proceed to conclude this matter and then if any further action, and if it develops any action is indicated then we will meet that situation when we get to it."

Following this, the instructions were given to the jury, the case was submitted, the verdict rendered, and motion for new trial was filed and overruled, but there is no

indication, directly or by inference, that either of these two matters which had expressly been reserved for subsequent consideration, again be considered and an investigation be made.

We have set forth in detail the discussions between counsel and the court. It is clear that the trial court, who viewed *in camera* the writing prepared by the juror, considered it to be "entirely unrelated to any issue in the * * * lawsuit," and that it pertained in some way to "qualifications for jury service."

It is equally clear that the court considered the newspaper articles to have been of the same nature as those that appear with frequent regularity in the newspapers. None pertained to appellant or to this case. There is no indication that the jurors had been instructed not to read newspapers, and we note that the members had gone to their respective homes between the first and second day of the trial.

■ The trial court had observed the trial, and could evaluate the effect, if any, of these two incidents, and in the absence of an abuse of discretion its judgment in the matters ordinarily would not be disturbed. Appellant's complaint, however, is that the trial court was not entitled to evaluate the situations without making a further investigation as to the effect, if any, on each juror. Appellant cites several cases, including *Mares v. United States,* 383 F.2d 805 (10th Cir. 1967), and *United States v. Hankish,* 502 F.2d 71, 77 (4th Cir. 1974), which hold that when a jury is exposed to potential prejudicial information the court must, at least upon request, attempt to determine "the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial." We do not disagree with this general proposition. But the factual situation in this case, does not make the rule applicable.

■ Contrary to appellant's assertion that the trial court "refused" to take any action in the matters, it expressly stated, as to the juror incident, that in its discretion it would be "the better procedure" to "explore the matter at a later date" if it were then considered to be "at all pertinent," and as to the newspaper incident, it "reserved ruling on the motion for a mistrial," and "if it develops any action is indicated * * * we will meet that situation when we get to it." But, no further mention was made of either incident by appellant until after the jury was discharged, and then the jury was not subject to an interrogation of its members to determine whether some remedial action was required.

■ The soundness of this exercise of discretion on the part of the trial court is readily apparent. For example, if a jury had returned a verdict of acquittal, the prejudicial effect, if any, of either incident would be immaterial. But if the verdict was guilty, which it was, before the jury was discharged the court could then upon request have interrogated each member, if deemed advisable, and determine, as stated in *United States v. Hankish,* supra, "the extent and effect of the infection," and take the "appropriate measures to assure a fair trial," such as setting aside the verdict and granting a new trial. We cannot assume, contrary to what it said, that the court would not, if requested, have conducted the investigation. It was a reasonable and proper exercise of discretion on the part of the trial court to delay the requested investigations, and appellant cannot now complain on appeal, after it is too late to conduct an investigation of the individual jurors, that the trial court did not do what appellant did not request to be done.

Appellant has furnished us by mail a copy of the opinion in *United States v. Main Lobster Co., Inc.* (1st Cir. 1976), in which "In the exercise of [the court's] supervisory power" a judgment was reversed because of a newspaper report of an interview with a United States Attorney in which no direct mention was made of the pending case and the subject of which pertained to a function of the court, punishment, as distinguished from a function of the jury, and which the court expressly held was not "sufficiently prejudicial to cause the trial to be constitutionally unfair."

■ This opinion, as are all opinions of lower courts of other jurisdictions, is entitled to respectful consideration, which we have carefully afforded it, but it is not binding on this court, *Kraus v. Board of Education of City of Jennings,* 492 S.W.2d 783, 784–5 (Mo.1973), and we do not agree with its rationale. In the exercise of our "general superintending control," Mo.Const. Art. V, § 4, ¶ 1 (as amended 1970), assuming this presents a permissible area for the exercise of such control, we decline to consider the drastic action of a reversal of the judgment when appellant declined to request any further relief when the court expressly ruled that the matter could be pursued "if it develops that any action is indicated," and when there is no demonstration of prejudice, which if it existed could have been shown if appellant had followed through as proposed by the rulings of the Court. As we observed in another case, *State v. Brauch,* 529 S.W.2d 926, 930 (Mo.App.1975), we gather the impression that appellant preferred to preserve a contention of error rather than have the jury interrogated at the time suggested by the Court.

■ Appellant next asserts that it was error to permit the arresting officer to testify that in her opinion appellant was intoxicated. He cites two cases, *State v. Scaturro,* 509 S.W.2d 491 (Mo.App.1974), and *State v. Edmonds,* 468 S.W.2d 685 (Mo.App.1971). He asserts that he does not quarrel with the officer's testimony "as to what she observed of the defendant," but he contends that she was not "qualified to express an opinion of intoxication."

The police officer testified to actions of appellant in operating his automobile and his conduct subsequent to the time she stopped him which clearly indicated abnormal conduct, or conduct which was that of a person under the influence of alcohol or some other stimulant. For example, she testified that his car was weaving on the road; that when she stopped him he gave her an erroneous address; that his clothes were disarranged, he swayed when he walked, she smelled the odor of alcohol, his speech was not clear; and that he slept in the police automobile when on the way to the police station.

The complete answer to appellant's contention is found in *State v. Edmonds,* supra at page 688 where it is said:

"It is clear that a lay or non-expert witness may testify as to his opinion of the intoxication of another. The fact of intoxication is by its nature ordinarily a matter of opinion which must be shown by men not expert in such matters. * * Normally, where the witness is testifying that the person involved was intoxicated the opinion must be preceded or at least supported by the evidentiary facts of conduct or appearance upon which the witness bases his opinion. We have found no case in Missouri on what evidentiary facts must appear when the witness is testifying to non-intoxication. We believe, however, that the evidentiary rules dealing with opinion testimony of sanity or insanity are equally applicable to testimony of sobriety or drunkenness. A lay witness when giving an opinion that a person is of unsound mind must state the conduct or actions upon which he founds that opinion in order that the jury may determine whether the abnormalities testified to justify the opinion. Such factual basis is not required where the witness expresses an opinion of sanity, for there the opinion is based upon the absence of abnormalities. The opinion is not based on concrete facts demonstrating insanity but on the absence of such facts. * * The same is true in the area of intoxication. An opinion of intoxication is based upon actions and appearances not normal, whereas an opinion of non-intoxication is based upon the absence of such actions and appearances."

Appellant's final point is that the court erred in permitting the prosecuting attorney to comment in argument "on failure of [appellant] to testify or produce evidence * * *."

The police officer stopped appellant on Telegraph Road in South St. Louis County. She testified that when she asked appellant where he was going, he replied "Home,"

but at the time he was not proceeding in that direction. In oral argument the prosecutor said: "He started to leave the scene. He gets into his car and starts to drive away. The man obviously wasn't aware of what was going on; he gets into his car and started wandering off. When he was asked where he was going at the time of his arrest he said he was going home. You would assume he lived in that area. He lives one mile to the east and five or six miles south of there [the place of arrest]! He's wandering around, he doesn't know where he is! There is no evidence of where he is going or anything—." Appellant's objection, in its entirety, was: "I object to that comment and move for a mistrial. I ask the jury be instructed to disregard that. I move for mistrial."

It thus is clear that the basis of the objection at the time was not, as now contended on appeal, that the argument constituted a comment on the failure of appellant "to testify or produce evidence."

We first note that in certain circumstances the prosecutor may comment on the failure of the accused to present evidence, but when the accused elects not to testify he may not comment on the failure of the accused to present evidence by his own testimony. Rule 26.08, and § 546.270 RSMo 1969. From appellant's argument it is reasonably clear that his contention is that the statement "There is no evidence of where he is going or anything" amounted to a comment on appellant's failure to testify. In addition to the inadequacy of the objection, the argument of the prosecutor was self-contradictory. He first said that there was evidence that appellant was going home and he then said there was no evidence of where he was going. This leaves to speculation the reason the court overruled the objection.

No reasonably intelligent juror could have construed the statement of the prosecutor as a comment on appellant's failure to testify. It certainly was not a direct or certain reference to such failure. The comment was to the effect that the evidence, whether offered by the State or by appellant, did not show where he was going because he was not, at the time of the arrest, going in the direction of his home. That was a permissible and proper comment. For cases announcing the rule forbidding comments on an accused's failure to testify, and in which comments similar to or more questionable than the one here were approved, see *State v. Baker,* 439 S.W.2d 515 (Mo.1969); *State v. Varner,* 329 S.W.2d 623 (Mo.1959); *State v. Hardy,* 365 Mo. 107, 276 S.W.2d 90 (1955); *State v. McDaris,* 463 S.W.2d 809 (Mo.1971); *State v. Jackson,* 444 S.W.2d 389 (Mo.1969) and *State v. Michael,* 361 S.W.2d 664 (Mo.1962).

In addition to the fact that appellant did not object at the time on the basis that the argument constituted a comment on his failure to testify, for which reason alone the point could and probably should be overruled, the statement did not in fact violate the rule prohibiting a comment on appellant's failure to testify.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.