**STATE of Missouri, Plaintiff-Appellant,**

v.

**James M. PETERS,
Defendant-Respondent.
No. 14939.**
Missouri Court of Appeals,
Southern District,
Division One.

May 15, 1987.

Thomas E. Mountjoy, Pros. Atty., Sam S. Phillips, Asst. Pros. Atty., Springfield, for plaintiff-appellant.

Lawrence R. Catt, Wampler, Wampler & Catt, Springfield, for defendant-respondent.

HOLSTEIN, Judge.

This is an appeal by the State of the trial court's order suppressing evidence of a blood test in a case in which the defendant is charged with the misdemeanors of driving while intoxicated and driving on the wrong side of the road. The action of the trial court in suppressing the evidence of the blood test is affirmed.

The motion to suppress pointed out that inasmuch as §§ 577.020 and 577.026 RSMo 1986 require that chemical analysis of a person's blood be performed according to satisfactory techniques, devices, equipment, or methods approved by the department of health and the department of health has failed to issue any regulations approving techniques, devices, equipment or methods for determining blood alcohol content from blood samples, such analysis is inadmissible in evidence.

The "Department of Health" includes what was formerly referred to as the "Division of Health". In the regulations hereafter cited the same agency is referred to as "the division". We use the terms interchangeably herein.

For the purposes of the hearing on the motion to suppress, the parties stipulated that a trained technician, doctor or nurse had drawn blood from the defendant in compliance with § 577.029 RSMo 1986 and the blood sample was subjected to alcohol content analysis using the gas chromatography method by chemist Bill Marbaker of the Missouri State Highway Patrol Laboratory, who holds a Type I permit. The court took judicial notice of the pertinent portions of the Code of State Regulations, 13 CSR 50–140.

The only testimony at the hearing was by Richard Gnaedinger PhD, chief of chemistry for the Missouri Department of Health. Dr. Gnaedinger testified that it was his duty to approve methods for determining blood alcohol from a blood sample. He is also involved in approving applicants for Type I permits. Each such applicant when approved, is approved only to use the method of blood alcohol analysis upon which he successfully was tested. Three scientifically accepted methods have been approved by Dr. Gnaedinger. These are (1) the gas chromatography method mentioned above, (2) the enzymatic method, and (3) the distillation and titration method. None of the three methods are listed as an "approved" method in the Code of State Regulations. The rationale offered by Dr. Gnaedinger for not specifically approving methods was the "endless list of variations" in the principal methods, all of which would produce an accurate result. He identified State's Exhibit 3 as a list of eleven variations of the three methods which he, on behalf of his agency, had approved for use in various laboratories in the state.

After the trial court sustained the motion to suppress, the State perfected its appeal pursuant to § 547.200 RSMo 1986, and Rule 30.02.

The State does not argue nor does the record indicate that the blood sample might be admissible as evidence seized pursuant to a lawful arrest, independent of the "implied consent" law. The sole basis urged for admissibility of the blood sample is §§ 577.020 et seq. We decide this case only on the issue presented.

This court has previously decided that under the former "implied consent" law, § 564.441 RSMo 1969 (now repealed), for a chemical analysis of a person's breath to be valid it must be performed according to methods approved by the department of health. *State v. Crowell*, 560 S.W.2d 889, 891 (Mo.App.1978); *State v. Sinclair*, 474 S.W.2d 865, 868 (Mo.App.1971). The current "implied consent" law uses almost identical language but expands the scope of the implied consent, authorizing the taking of blood, urine or saliva samples, in addition to breath samples. The principles enunciated in cases construing the former statute are applicable here.

Section 577.020 provides:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition ...

(3) Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid under the provision of sections 577.020 to 577.041 shall be performed according to methods approved by the state division of health by licensed medical personnel or by a person possessing a valid permit issued by the state division of health for this purpose ...

(4) The state division of health shall approve satisfactory techniques, devices, equipment, or methods to be considered valid under the provisions of sections 577.020 to 577.041 and shall establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall

be subject to termination or revocation by the state division of health.

Section 577.026 provides:

(1) Chemical tests of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577 020 to 577.041, shall be performed according to methods and devices approved by the state division of health by licensed medical personnel or by a person possessing a valid permit issued by the state division of health for this purpose.

(2) The state division of health shall approve satisfactory techniques, devices, equipment, or methods to conduct tests required by sections 577.020 to 577.041, and shall establish standards as to the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state division of health.

The above legislative enactments are a substitute for the common law foundation for the introduction of evidence of analyses for blood alcohol, and are mandatory. *State v. Sinclair*, supra 868; *State v. Paul*, 437 S.W.2d 98, 101 (Mo.App.1969). If the State has failed to comply with these statutes the blood analysis is inadmissible and prejudicial.

The department of health has adopted administrative rules relating to the determination of blood alcohol by blood, breath, saliva, and urine analysis. 13 CSR 50–140.-020(1) describes the five types of permits issued by the department including the Type I permit, the holder of which is permitted "... to determine the alcoholic content of blood from a sample of expired (alveolar) air, blood, saliva or urine utilizing standard quantitative chemical analytical methods as approved by the division ..." The same section of the regulation makes provision for testing of applicants for a Type I permit. 13 CSR 50–140.020(5). The regulations also make provision for the qualifications of a person seeking to become the holder of a Type I permit. 13 CSR 50–140.030. Finally, the regulations provide for the duties and responsibilities of a Type I permittee. Those duties and responsibilities are set forth as follows:

(1) Permittee, Type I, is for the determination of the alcoholic content of the blood from a sample of expired (alveolar) air, blood, saliva, or urine utilizing standard quantitative chemical analytical methods.

(A) The permittee shall accept for test only specimens properly identified and submitted in a manner so that reliable results are possible.

(B) He shall conduct all analyses in a fair, impartial and competent manner.

(C) He shall keep adequate records of receipts and analyses of all specimens.

(D) Permittee shall examine and report results on check specimens for alcohol provided by the division, at intervals deemed to be appropriate by the division.

13 CSR 50–140.040. No other reference is made in the regulations describing the "techniques, devices, equipment or methods" approved for analysis of a blood sample.

The statutory word "method" refers to the method of testing whether it be a breathalyzer, gas chromatography or other method which might find approval by the department of health. *State v. Sinclair*, supra 868. The State's position is that the department's regulations authorize the Type I permit and prior to the issuance of the permit the applicant is required to "... supply his analytical method, prove his accuracy and possess or have access to satisfactory techniques ..." Thus, the State argues, the regulations approve methods, devices, equipment or techniques for conducting blood alcohol tests. This tortured argument would result in a situation in which the department of health has delegated its responsibility to the Type I permittee. This conclusion is contrary to the clear and redundant statutory language which requires a specific approval of methods by the department of health.

The State's evidence suggested that the list of methods contained in State's Exhibit 3 are "approved in the State of Missouri for determining alcohol in blood". Unfortunately, the exhibit has never been adopted as an administrative rule.

Section 536.010(4) sets out the definition of the term "rule" as follows:

Rule means each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of an existing rule, but does not include ... (exceptions are thereafter listed not applicable here).

■■■ Inasmuch as the approval of the methods of blood analysis contained in Exhibit 3 is an attempt by the department of health to implement the law, as well as prescribe a policy of the department, the agency was required to comply with the statutory publication and filing procedure for adopting rules under § 536.021 RSMo 1986.

■■ In an analogous case, another state agency, the division of family services, had published a manual setting forth methods for computing the amount of medicaid to be paid on behalf of a recipient of benefits to a nursing home. The court found such policy was a "rule" which affected substantial legal rights of the recipient and to be effective must satisfy the statutory publication and filing requirements. *Missouri Division of Family Services v. Barclay* 705 S.W.2d 518, 521 (Mo.App.1985). In the absence of compliance with the statute the "rule" is void. § 536.021.6 RSMo 1986.

Finally, the State urges the court to avoid requiring the department of health to publish the specific analytical methods to be used because of the "endless list of variations" involved. We point out to the State that it is the statute, not this court, that requires publication of such methods. While it may be true that numerous inconsequential variations may exist in performing chemical analyses, we find it difficult to believe that the department of health cannot adequately describe the techniques, devices, equipment or methods in broad enough terms to allow for such variations and yet assure accurate results. In view of the gaping deficiencies in the regulations and the dangers posed by drunk drivers on the public highways, we urge the department of health to take appropriate steps to promulgate rules prescribing the methods or techniques approved for the analysis of blood samples for alcohol content.

The order suppressing the evidence of the blood alcohol test is affirmed.

CROW, C.J., and GREENE, P.J., concur.