STATE of Missouri, Plaintiff–Appellant,

v.

Scott KUMMER, Defendant–Respondent.

No. 53593.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 24, 1987.

Motion for Rehearing and/or Transfer
Denied Dec. 22, 1987.

---

Madeleine O'Dea Birmingham, Asst. Pros. Atty., Clayton, for plaintiff-appellant.

Daniel V. O'Brien, St. Louis, for defendant-respondent.

SIMEONE, Senior Judge.

This is an interlocutory appeal by the State of Missouri pursuant to § 547.200.1(2) R.S.Mo.1986 and Rule 30.02, V.A.M.R., from an order of the circuit court of St. Louis County, entered on August 3, 1987, which sustained defendant's motion to suppress the results of his blood alcohol test offered upon criminal charges of manslaughter and assault. The trial court sustained the motion upon the authority of *State v. Peters,* 729 S.W.2d 243 (Mo.App.1987). The court sustained the motion on the ground that at the time of the accident there were no regulations promulgated by the Department of Health governing the methods or techniques concerning the validity of tests for blood-alcoholic content, under the Missouri Implied Consent Law, §§ 577.020–577.041, R.S.Mo. 1986. In the absence of such "approved" methods for testing, the trial court held the results of the blood test were inadmissible in evidence.

These proceedings arose out of a two car collision in St. Louis County on June 6, 1986 when the automobile which respondent was driving was involved in a collision in which one of his passengers, Carman Patrick, was killed and another passenger, Kari Lyyn Everly, was injured.

On the evening of June 6, 1986 at about 8:00 p.m., Officer Richard Leinweber of the St. Louis County Police Department was dispatched to an accident scene in St. Louis County. When he arrived, the paramedics were already on the scene. The collision took place on Fox Creek Road, a two-lane "narrow road [with] no shoulders." One of the vehicles, a Chevrolet Citation driven by the respondent, Scott Harold Kummer, was in a creek, a "drop of [some] eighteen feet." Officer Leinweber went down to the vehicle and the paramedics advised him that "one subject" showed no signs of life. After assisting the paramedics, the officer went back up to the road. The respondent was "standing on the road." He was in "kind of a dazed state and they advised me [Leinweber] that he was the driver of the [Chevrolet] Citation." At the scene, Officer Leinweber had the following conversations with the defendant. "At that time I asked, how many people were in the car with you? He said, I don't remember, I think it was two people with me." A few moments later, the officer asked "if he was

hurt and he said, no, he was not, and he started telling me he had to get back to his relatives or get in touch because of some kind of function." The officer noticed that the respondent had several cuts and his shirt had a bloodstain. Additionally, "he had an odor of an alcoholic beverage on his breath." There were also "several broken bottles [of hard liquor] inside [the vehicle] and several more lying outside." Officer Leinweber placed Kummer under arrest. He concluded that during the time he talked to the respondent—four to five minutes—he was "under the influence."

Another officer, Officer Denver Bealmear, was also dispatched to the accident scene. When he arrived he observed some "people down in the ditch." At the time of his arrival the emergency crew was there, as well as Officer Leinweber, and the paramedics. Officer Bealmear smelled "what appeared to be alcohol on Mr. Kummer's breath." After the respondent was examined, Officer Bealmear arrested Kummer, advised him of his *Miranda* rights, and took him into custody for suspicion "of driving while intoxicated." In Officer Bealmear's opinion, Kummer was intoxicated. Officer Bealmear told the respondent that "I will be taking you from here to go to the St. Louis County Hospital and in the hospital I am asking them to take a blood test to determine alcohol content." Kummer nodded his head "in the affirmative." The officer also asked Kummer if it is "okay" with him to have a blood test taken, and he "nodded his head in the affirmative." When Officer Bealmear and Kummer reached the hospital, Kummer was taken to the examination room, and, after some paper forms were completed, a nurse "drew some blood from Mr. Kummer's arm and immediately removed the vial and syringe and handed it" to Bealmear. Officer Bealmear took the vial of blood to the County Intake Center and placed it in a locker.

On June 12, 1986, a "gastromatic" analysis of the blood sample, which separates alcohol from the fibers of the blood, was made. The laboratory report showed that there was 0.14 percent alcohol in the respondent's blood.

On July 7, 1986, Scott Kummer was indicted for involuntary manslaughter for the death of Carman Patrick, § 565.024, R.S.Mo., and for assault in the second degree, § 565.060.1(4) R.S.Mo., for the injuries sustained by Kari Lyyn Everly.

The cause was set and reset for trial several times. On June 16, 1987, defendant filed his "Motion To Suppress Blood Test Evidence or in the Alternative Defendant's Motion In Limine" to suppress the results of the blood test. The motion stated that the admissibility of the blood alcohol test results is governed by the provisions of §§ 577.020–577.041, R.S.Mo.1986 which are "mandatory" and "abrogate the common law foundation for the introduction of such evidence." On July 30, 1987, testimony was heard on the motion prior to the trial. At the hearing Officers Leinweber and Bealmear testified as to the facts recited above. Patricia Dougherty of the crime laboratory of St. Louis County testified that a gastromatic analysis of the blood sample was made. She stated that the "blood is taken from the tube ... and put in a small glass vial with sodium chloride and heated ... and after a period of hours it is withdrawn, the fibers, and you can detect how much alcohol is in it." She testified that Ryan Hampton, a forensic scientist, prepared a laboratory report of the blood test on June 12, 1986 which showed that Mr. Kummer's blood sample contained 0.14 percent alcohol. She referred to the State's "policy"—the Department of Health's emergency regulations effective May 31, 1987—which set forth the methods and techniques for the determination of blood alcohol content. The emergency rules, 19 CSR 20–30.070, were filed May 21, 1987 and became effective May 31, 1987.[1] The emergency rules approved

---

1. Permanent rules became effective August 27, 1987. 12 Order of Rulemaking No. 16, August 17, 1987. The only difference was to delete a portion of subsection (2) that blood samples

shall be collected in a container containing either sodium heparin potassium oxalate or sodium fluoride and substitute "appropriate anti-

"chromatographic identification and quantitation of alcohols in liquid or vapor phase" —the gas chromatography method of determining blood alcohol content.

On August 3, 1987, the trial court sustained the motion to suppress the blood test. In proper time the State filed this interlocutory appeal pursuant to § 547.200.1(2), R.S.Mo.1986.

On appeal the State contends that the court erred in sustaining the motion because (1) "the provisions of the Missouri Implied Consent Law [§§ 577.020–577.041 R.S.Mo,, 1986] do not apply since the State is not relying on the implied consent of the defendant for the admissibility of the test results," but rather relies upon the separate and distinct theories of "express consent" and "search incident to a lawful arrest as enunciated in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)" and (2) at the time the results of the blood test were offered against respondent at the hearing on the motion to suppress in July, 1987, the method or technique of gas chromatography had been approved by the Department of Health and the test was conducted in accordance with such approved method.

The respondent, Kummer, contends that the court did not err because the Implied Consent Law is applicable "and no other theories of admissibility are applicable" so that the court did not err. The respondent relies primarily on *State v. Peters, supra.*

We need not reach or resolve the broad-sweeping contentions and issues raised [2] with all of their complex analyses of the various provisions of the Implied Consent Law. We conclude that (1) *State v. Peters* is not controlling and (2) the gas chromatography test in this case was the "policy" of the department and an "approved" method for testing blood alcohol content at the time of the hearing on the motion to suppress and does not constitute a retrospective regulation prohibited by the Constitution or by law. The approved method relates to evidentiary and procedural matters so that the proscription against a retrospective rule is not violated.

The respondent principally relies upon *State v. Peters, supra,* to uphold the trial court's order. That decision is not controlling. In *Peters,* the state appealed the trial court's order suppressing evidence of a blood test in a case where the defendant was charged with the misdemeanors of driving while intoxicated and driving on the wrong side of the road. The motion to suppress contended that §§ 577.020 and 577.026, R.S.Mo.1986 require that chemical analysis of blood be performed according to methods and devices approved by the State Department of Health and that the department failed to issue any regulations approving satisfactory "techniques, devices, equipment or methods" for determining blood alcohol content from blood samples, so that the results of such analysis were inadmissible in evidence. The Southern District affirmed the trial court's ruling. In *Peters,* blood was drawn from the defendant by a trained technician in compliance with § 529.029 and the blood sample was subjected to alcohol content analysis using the gas chromatography method. In *Peters,* the sole basis urged for the admissibility of the blood sample was § 577.020. The court explicitly noted that the state had not contended nor did the record indicate whether the blood sample might be admissible as evidence seized pursuant to a lawful arrest, independent of the "Implied Consent Law." The court therefore did not rule on whether the Implied Consent Law was the exclusive means of introducing evidence of blood test results. The court

coagulant" terminology. The difference is not significant.

**2.** The Implied Consent Law as it presently exists is at best confusing and at worst contradictory. For example, under § 577.037, it is not clear if scientific tests which are not approved by the department are admissible if they are scientifically reliable and a proper common law foundation is laid. Also may a sample of blood

be taken in an alcohol related offense such as manslaughter and the test results admitted when there has been a "refusal" under § 577.041 which states that "none shall be given"? See *State v. Sinclair,* 474 S.W.2d 865 (Mo. App.1971); *cf.* Attorney General opinion 33–84. We urge the General Assembly to address these and other problems.

did, however, hold that under §§ 577.020 and 577.026 it was incumbent upon the Department of Health to promulgate rules prescribing and approving the methods or techniques for the analysis of blood samples for alcohol content since the law was intended as a substitute for the common law foundation for the introduction of evidence analyses for blood alcohol. Thus the failure of the department to issue any rules or regulations regarding approved methods for determining blood alcohol content precluded the admission of the results of a blood test sample taken from the defendant.

*Peters* is distinguishable from the case at bar in several respects: (1) in *Peters*, there were no rules or regulations at any time prior to the cause being disposed of approving any method or technique concerning the taking and analyzing of blood samples; (2) in the case at bar, regulations were in effect at the time of the motion to suppress and the hearing thereon, and the chemical analysis was in accordance with those approved regulations; and, (3) in *Peters*, the defendant was charged with misdemeanor offenses, while in the case here, defendant is charged with the felonies of manslaughter and assault in the second degree. *Peters*, does not, therefore, control the disposition of this appeal.

■ The State contends that §§ 577.020.-3, 577.026.1 and 577.037.4 do not require that the method of analysis be approved at the time of the incident but that it is sufficient if the method of analysis was approved at the time it is offered in evidence. We agree. It is sufficient if the method of gas chromatography analysis [3] is approved at the time the results are offered, despite the respondent's position that this would constitute a retrospective application of the rules and regulations.

■ Under Article I, § 13 of the Missouri Constitution, no law retrospective in its operation may be enacted. Generally, a law is not to be applied retrospectively but only prospectively unless a contrary intent clearly appears from the express language. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 34 (Mo. banc 1982), app. dismissed 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983); *State ex rel. St. Louis–San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974). This general principle, however, does not apply when a law or rule deals only with procedure or remedies. In such case the law or rule applies to all actions whether commenced before or after the enactment of the provision. "No person may claim a vested right in any particular mode of procedure for the enforcement or defense of his rights, and where a new [law] deals only with procedure it applies to all actions including those pending or filed in the future." *Scheidegger v. Greene,* 451 S.W.2d 135, 137 (Mo.1970); See *Jackman v. Century Brick Corporation of America,* 412 S.W.2d 111, 116 (Mo. 1967); *Goodman v. St. Louis Children's Hospital,* 687 S.W.2d 889, 891 (Mo. banc 1985); see also 37 Mo.Dig.2d, *Statutes,* Key No. 263 at 799; *Danaher v. Smith,* 666 S.W.2d 452 (Mo.App.1984) (enlarging class of persons as witnesses). The doctrine that procedural statutes operate retrospectfully applies to administrative rules. *St. Louis Police Officers' Assn. v. Sayad,* 685 S.W.2d 913, 917 (Mo.App.1984).

■ The methods and techniques "approved" by the Department of Health deal with the "admissibility" of blood alcohol chemical analysis. As such, the rules and regulations relate to "evidence" and the admissibility of such evidence. These regulations are "procedural" so that the respondent cannot complain that the rules were not promulgated at the time of the fatal incident. It is sufficient, for procedural admissibility and evidentiary purposes, that the rules were approved at the time of the motion hearing and that the test and analysis were conducted in accordance with those rules. There was evidence at the hearing on the motion that the test

---

**3.** For a complete explanation of the scientific principles involving gas chromatography, see 1 Erwin, *Defense of Drunk Driving Cases,* § 17.05 at 17–51—17–61 (3rd ed. 1987). This method of analysis is a recognized method and has "become a powerful analytical tool for separating components of a complex mixture and sensing them. This elegant analytical tool was developed during the 1950's and it has become a household analytical instrument in the chemical laboratory." 1 Erwin, *supra,* § 17.05 at 17–51.

was the "policy" of the Department of Health and had been approved prior to the hearing.

For the foregoing reasons, the order of the trial court is reversed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.

## OPINION SUMMARY

Interlocutory appeal pursuant to § 547.200.1(2) from an order of the circuit court of St. Louis County sustaining defendant's motion to suppress results of blood-alcohol content test upon charges of manslaughter and assault in the second degree.

REVERSED.

*Division Five Holds:* The trial court erred in sustaining the motion to suppress because (1) *State v. Peters*, 729 S.W.2d 243 (Mo.App.1987), relied upon by the trial court is not controlling in this proceeding; and (2) the fact that there were no regulations promulgated by the Department of Health relating to an approved method of testing at the time of the fatal vehicular accident does not invalidate the admissibility of such test results since the test was "approved" at the time that such results were offered in evidence at the hearing on the motion to suppress and thus is not a retrospective regulation in violation of law.