**Chester L. ECKHOFF, Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. WD 39432.

Missouri Court of Appeals, Western District.

Feb. 23, 1988.

Greg T. Spies, Watson, Ess, Marshall & Enggas, Kansas City, for appellant.

William L. Webster, Atty. Gen., Cynthia B. Green, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

Chester L. Eckhoff appeals the judgment which sustained revocation of his driver's license pursuant to § 302.505.1, RSMo 1986,[1] for driving a motor vehicle while

---

1. All statutory references are to RSMo 1986.

intoxicated. The issue on appeal is whether evidence of breathalyzer test results was admissible over objection by Eckhoff that the chemical reagent test vials used in performing the breathalyzer test were not obtained from a source approved by the Missouri Division of Health through amendment to the Code of State Regulations.

The evidence at trial entitled the court to find that in the early morning hours of November 14, 1986, a Kansas City, Missouri police officer observed appellant driving his automobile in an erratic manner. The officer intercepted the vehicle and, together with another officer called to the scene, noted the odor of alcohol on appellant's breath. When appellant stepped out of his car, he stumbled several times and his balance was swaying. Appellant acknowledged he had been drinking.

Appellant was placed under arrest and was taken to a police station where a breath analysis test was performed using a Smith and Wesson 900A Breathalyzer machine. The test results showed appellant's blood alcohol concentration to be .20 percent by weight. Suspension of driving privileges is authorized when blood alcohol level reaches .13 percent. This much of the record is not in dispute but, if the test of appellant's breath was not conducted in conformity with department of health regulations, then cause for revocation was not established.

Numerous cases have held that in order to admit evidence of a breathalyzer test, it must be shown that testing methods set out in § 577.020 were followed in that the test was performed (1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the division. *Jannett v. King*, 687 S.W.2d 252, 254 (Mo.App. 1985). In this case, it is item (3) which is in question.

It is agreed that the test performed on appellant November 14, 1986 was conducted using a reagent vial or ampule manufactured by National Draeger, Inc. and that on November 14, 1986, the list of approved sources in the then current regulations, 19 C.S.R. § 20–30.050(2), did not include National Draeger. Relying on 19 C.S.R. § 20–30.060, which specifies that tests using the Breathalyzer Model 900A are to employ only chemical reagents obtained from a source approved by the division of health listed in 19 C.S.R. § 20–30.050(2), appellant contends the test in his case was not valid and the test result was inadmissible in evidence.

Additional facts relative to the use of the National Draeger product and disclosed by the evidence are as follows. On January 29, 1986 the director of laboratory services for the Missouri Department of Health reported by letter the results of tests performed on National Draeger test ampules. The tests showed the company's products met the department's specifications and were acceptable for use with the Breathalyzer Models 900 and 900A machines. National Draeger was informed by the letter that its product was being added to the list of approved reagents. On October 3, 1986 the department of health filed with the office of the Missouri Secretary of State a proposed amendment to 19 C.S.R. § 20–30.050 which added National Draeger's reagent to the list of approved sources for breathalyzer testing. That change in the regulations became effective December 25, 1986.

Appellant argues that the letter from the director of laboratory services should not have been admitted in evidence as proof that the department of health had in fact approved the National Draeger product because it was hearsay and was contrary to the state regulations then in effect showing approved equipment and devices. He also argues that the modification of the regulations filed October 3, 1986 was also irrelevant because the notice provided a deferred effective date to December 25, 1986, subsequent to the test performed on appellant. In substance, therefore, appellant urges a strict adherence to the current status of regulations as of the date of testing to determine the foundation necessary before breathalyzer test results are admissible. In making this argument, ap-

pellant does not demonstrate or suggest that the National Draeger ampule was tainted or that the test results themselves were adversely affected by use of the then unapproved reagent.

■ Automobile license revocation proceedings are administrative and civil in nature. They are not criminal or quasi-criminal. *State v. Byerly,* 522 S.W.2d 18, 20 (Mo.App.1975). In the context of the legislative purpose to remove dangerous drunk drivers from the roadways of Missouri, the strict letter of the D.W.I. law must yield to effectuate the purpose of the law. *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985).

■ The letter to which appellant objected was offered to show, and did effectively prove, that the National Draeger reagents had been tested by the department of health and found to be satisfactory some ten months before the breathalyzer test was performed on appellant. There is no question about the reliability of the product as evidenced by its subsequent addition to the approved list published in the code of state regulations. Appellant himself advances no claim of prejudice as to the test and makes no argument that use of the Draeger product gave an inaccurate result. The sole basis for the objection to the director's evidence, including the letter and the test results, was grounded on a claim that the strict letter of the law be observed. Under the facts here, that contention was appropriately denied. In the absence of any claim of actual prejudice and in view of unassailed proof that a correctly administered test in fact proved the state of appellant's intoxication, the technical objection must give way to accomplishment of the law's purpose, the sanctioning of drunk drivers by withdrawal of driving privileges.

Even were it to be assumed, however, that the strict adherence to the Code of State Regulations were mandated, the subsequent amendment of the regulations to include National Draeger as an approved supplier satisfies appellant's complaint. It is true that the amendment did not become effective until after the test was performed on appellant, but the regulations in effect when the evidence was offered and received at trial did show National Draeger's ampules to be approved for use in breathalyzer tests. The question is whether admission of the evidence is to be determined in accordance with the regulations on the former or the latter date. Appellant argues that to give effect to the subsequent amendment is to afford retroactive consequence violating the express directives of the department's own regulations.

Enforcement of the legislative concern for safety of the motoring public is exemplified by §§ 302.500 to 302.540, which provide that the privilege of driving an automobile may be suspended or revoked upon a showing that the person was operating a motor vehicle under a certain level of alcohol intoxication. That is the substantive aspect of the law. The determination of the fact of intoxication is to be made under certain rules of procedure for testing motorists who have been arrested on probable cause to believe a state of intoxication exists. The substantive aspect of the case, operating a motor vehicle while intoxicated, is implemented by procedures which may vary from time to time without altering the basic concept that licenses of intoxicated motorists are subject to suspension or revocation.

The general rule of statutory construction is that enactments are deemed to operate prospectively because the Missouri Constitution forbids enactment of a retrospective law impairing a vested right. Mo. Const. art. I, § 13. A procedural statute, by contrast, operates retrospectively unless a contrary intent is evidenced in the enactment. *See State v. White,* 622 S.W.2d 939, 947 (Mo. banc 1981), *cert. denied,* 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Administrative rules are subject to application of the same doctrines. *St. Louis Police Officers' Association v. Sayad,* 685 S.W.2d 913, 917 (Mo.App.1984).

■ In this case, the procedural components of the test performed on appellant included the technique and method, the qualification of the person administering the test and the nature and description of the equipment and devices. As of the date

the evidence was offered, the regulations gave full sanction to all procedural components used to test appellant. There is no basis for complaint that use of the National Draeger product acquires validity only by a retroactive application of the regulations. The designation of approved suppliers of test ampules is procedural only and affected no substantive right which appellant may invoke to exclude the breathalyzer test result from admission in evidence.

Appellant argues that this result is in conflict with the decision in *State v. Peters,* 729 S.W.2d 243 (Mo.App.1987), where it was held that the test result from a blood sample could not be admitted in evidence in a misdemeanor prosecution for driving while intoxicated. That result was predicated on the provisions of §§ 577.020 and 577.026 and the failure by the department of health to issue any regulations prescribing the methods approved for analysis of blood samples. *Peters* is not applicable to the situation in the present case for several reasons.

We note first that *Peters* was a criminal prosecution to which a different standard for proof applies. As was noted earlier in this opinion, a driver's license revocation review is a civil matter. More importantly, however, *Peters* did not involve retrospective application of an administrative rule because, as the opinion states, the department of health had adopted no rule on the subject either before or after the offense and administering of the blood test. The subsequent case of *State v. Kummer,* 741 S.W.2d 285 (Mo.App.1987), demonstrates that the result in *Peters* would have been otherwise if a regulation for testing had been adopted by the division of health before the test results were offered in evidence. The result reached in the present case is in accord with and employs the same reasoning as that used in *Kummer* by the Eastern District.

The judgment is affirmed.

All concur.