## STATE OF FLORIDA v BLACK, et al.

Case No. 54429/30-QB (Consolidated)

County Court, Volusia County

July 13, 1988

### APPEARANCES OF COUNSEL

**Rosemary Calhoun,** Assistant State Attorney, for plaintiff.

**Flem K. Whited, III** for defendants.

**Michael H. Lambert** for defendants.

### OPINION OF THE COURT

SHAWN L. BRIESE, County Judge.

THIS MATTER having come before the Court on June 17, 1988 for a hearing on Defendants' Motions to Suppress the results of chemical breath tests. This Court, pursuant to oral and written argument, finds as follows:

Defendants were arrested and charged with Driving Under the Influence in violation of § 316.193(1) *Fla. Stat.* (1987). Each submitted to a breath test on an Intoximeter 3000 to determine his blood alcohol content. Each respective result was greater than .10 percent. Defen-

dants allege their breath test results should be suppressed due to a significant modification of the machine prior to their tests.

A Certificate of Approval on the Intoximeter 3000 (Rev. B1) (the modified machine) was issued by the Department of Health and Rehabilitative Services (HRS) on May 13, 1988, subsequent to defendants' tests. The issue in the instant case is not the significance of the modification as was found in *State v. Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988) and this Court's decisions in *State v. Rice, et al.,* Case Nos. 62886-BR (Volusia Cty. Ct. January 6, 1988) and *State v. Reid, et al.,* Case Nos. 31146-PO, 55338-BR, 22154-BN (Volusia Cty. Ct. May 20,1987), or the sufficiency of the testing procedures for the recertification but the *retroactive application* of the subsequent certificate approval to the instant causes.

The State principally relies on *Drury v. Harding,* 443 So.2d 360 (Fla. 1st DCA 1983) wherein the District Court upheld the trial court's retroactive application of HRS emergency rules adopted on December 16, 1982 governing the administration of chemical tests due to a legislative revision effective July 1, 1982 delegating sole responsibility for said rules to HRS rather than to HRS in conjunction with the Department of Highway Safety and Motor Vehicles (DHSMV). The District Court certified the question.

The State's interpretation of the holding in *Drury v. Harding,* 461 So.2d 104 (Fla. 1984) is strained. The Florida Supreme Court based its decision on principles of statutory interpretation rather than retrospective application. The Court found that HRS maintained a set of rules governing the administration of chemical tests on July 1, 1982. The readoption of provisions of prior regulations on December 16, 1982 did not destroy or interrupt the original rules.

The Court specifically quashed the portion of the district court opinion relating to the retroactive application of the subsequently adopted HRS rules. The State's argument that the Court's action did not disapprove the district court's opinion dealing with retroactive application misinterprets the meaning of "to quash". The State's reliance on *State v. Fardelman,* 453 So.2d 1183 (Fla. 5th DCA 1984) is also misplaced since *Fardelman* relies on the *Drury* district court opinion which was quashed. *Fardelman* was written approximately four months prior to the *Drury* decision by the Florida Supreme Court.

It appears that only Pennsylvania has dealt with similar situations as are found herein. The appellant-defendant in *Commonwealth v. Hess,* 503 A.2d 448 (Pa. Super. Ct. 1986) maintained that the trial court erred in not suppressing the results of a breathalyzer test due to the

**65**

fact that at the time the test was administered two statutory preconditions for admission into evidence of the test results were not satisfied.

In order for the results to be admitted into evidence the testing device had to be approved for usage by the Department of Health and the procedures for administering the test had to be promulgated jointly by the Departments of Health and Transportation. The device used and the procedures for administration and for insuring the device's accuracy had been approved by the Department of Transportation at the time of administration of the test to Hess. The Department of Health approved the same well before trial.

The issue was whether the two preconditions had to be satisfied prior to administration of the test or prior to trial. The Court looked to the legislature's reasons for enacting the preconditions. The Court, citing *Commonwealth v. McGinnis,* 486 A 2d 428 (Pa. Super. Ct. 1984) noted:

> The preconditions were established to assure that the results of the test were sufficiently reliable to have probative value. The preconditions involve the integrity of the device itself and the procedure for using it. It cannot be said that the reliability of the test result is vitiated if approval of the device and the procedures comes after the administration of the test. Whether or not the test has probative value is important at the guilt determining phase of the procedure, not necessarily before.

The Court specifically held that the preconditions for admissibility of the test results must be satisfied at the time of trial and not at the time the test is administered. See also *Commonwealth v. Benson,* 421 A. 2d 383 (Pa. Super. Ct. 1980).

The *McGinnis* cases (496 A. 2d 418 (Pa. Super. Ct. 1984), 515 A.2d 847 (Pa. 1986)) do not suggest a different result. The modified breathalyzer model 1000 in *McGinnis* was never approved by the Department of Health at the time the breath result was introduced into evidence. Contrast the instant cases. The lower court suggested that the Commonwealth could establish an alternate foundation for admissibility by showing that the test actually administered was sufficiently reliable to permit the results to have probative value. See *Commonwealth v. Hess, supra.* The Supreme Court reversed the lower court and discharged McGinnis due to the uncontroverted fact that the only reason McGinnis was charged with driving under the influence was because of the breathalyzer test results, i.e., a directed verdict of acquittal should have been granted at trial.

*State v. Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988) also does not

66

suggest a different result. The Court answered the following question in the affirmative:

> Whether modification of a component part of a previously certified breath-testing instrument requires certification of that instrument by the Department of Health and Rehabilitative Services *before the alleged test results from said instrument may be admitted into evidence?* [Emphasis added].

The county court's suppression of breath test results was affirmed. This Court does not suggest that the State in *Flood* could now use results of the modified re-certified machine. Recertification would of had to occur prior to the guilt phase of the proceeding, i.e., prior to trial and prior to rulings affecting the admissibility of evidence such as a motion to suppress or in limine. The inadmissibility of the breath test results in *Flood* as determined by the Fifth District Court of Appeal became "the law of the case", *Copeland v. State,* 463 So.2d 317 (Fla. 2d DCA 1984) and *State v. Thompson,* 357 So.2d 428 (Fla. 4th DCA 1978). See also *State v. Christian,* 463 So.2d 264 (Fla. 2d DCA 1984) and *State v. Rollins,* 346 So.2d 619 (Fla. 3d DCA 1980). Flood could be tried absent the breath test evidence assuming the remaining evidence was sufficient.

The certification of the modified Intoximeter 3000 (Rev. B1) subsequent to the test but prior to the guilt phase of the proceedings herein does not vitiate the quality of the obtained results.

Based on the above and foregoing, it is hereby;

ORDERED and ADJUDGED that Defendants' Motions to Suppress are denied.

DONE and ORDERED in Chambers at Daytona Beach, Volusia County, Florida this 13th day of July, 1988.