# STATE OF FLORIDA v BENNETT, et al. (Consolidated)

Case No. 84072/3-QH

County Court, Volusia County

October 12, 1988

### APPEARANCES OF COUNSEL

**Sam Easterbrook,** Assistant State Attorney, for plaintiff.

**Flem K. Whited, III,** for defendants.

### OPINION OF THE COURT

SHAWN L. BRIESE, County Judge.

THIS MATTER came before the Court on August 30, 1988 for a

hearing on Defendants' Motions to Suppress the results of Intoxilyzer 5000 chemical breath tests. This Court, pursuant to stipulated facts, argument, and memorandum of law along with submitted case authority, finds as follows:

Defendants were arrested and charged with Driving Under the Influence in violation of *FS* § 316.193(1) (1987). Each submitted to a breath test on an Intoxilyzer 5000 to determine his/her blood alcohol content. Each respective result was greater than .10 percent. Defendants allege their breath test results should be suppressed due to a substantial modification of the machine prior to their tests (said substantial modification was stipulated to by the State) and due to the fact that the modified machine has not been approved in compliance with HRS Rule 10D-42.22.

A Certificate of Approval on the modified Intoxilyzer 5000 was issued by the Department of Health and Rehabilitative Services (HRS) on August 23, 1988, subsequent to defendants' tests. The certificate includes the statement, "The above approved instrumentation will be included in the next revision of Department Rules."

The retroactive application of the approval of a chemical breath test instrument (the Intoximeter 3000) under identical circumstances as are found herein was initially faced in this Court's decision in *State v Black, et al.,* 29 Fla. Supp. 2d 64 (Volusia County Ct., July 13, 1988). This Court, relying principally on the rationale in *Commonwealth v Hess* 503 A.2d 448 (Pa. Super. Ct. 1986) and specific language in *State v Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988), held that a certification subsequent to administration of an actual breath test but prior to the guilt phase of the proceedings did not vitiate the quality of the obtained results. Defendants' Motions to Suppress were denied.

The defense makes arguments that were not made in *Black, et al., supra.* The defense maintains that the modified Intoxilyzer 5000 is not approved until it is included on the list of approved machines found in HRS Rule 10D-42.024 promulgated pursuant to the notice requirements in *FS* Ch. 120 (1987) (Administrative Procedure Act) and that application of rules in effect at the time of trial as opposed to the time of the offense, i.e., retroactive certification, if substantive, are illegal ex post facto laws and if procedural are violative of *FS Const.* Art. V, § 2(a).

This Court will address the latter argument first. The defense contends that the HRS rules and regulations pertaining to chemical analysis of breath to determine blood alcohol content are substantive in nature. It would appear to this Court that such rules and regulations

95

are procedural in nature. The Court in *State v Bender,* 382 So.2d 697 (Fla. 1980) noted that the legislature assigned to executive agencies the responsibility to establish proper uniform testing *procedures* for the protection of the public. The Court characterized the delegation as "assigning an executive agency supervising responsibility over a *police power function* that already exists." [Emphasis added].

The facts in *State v Kummer,* 741 S.W.2d 285 (Mo. Ct. App. 1987) are analogous to the facts in the instant case. Scott Kummer was arrested, after an automobile accident on June 6, 1986 for driving while intoxicated. He was charged, on July 7, 1986, by indictment, with involuntary manslaughter. A Motion to Suppress/Motion in Limine was heard on July 30, 1987. Emergency rules approving the gas chromatography method of determining blood alcohol content were filed on May 21, 1987 and became effective May 31, 1987.

The Court in distinguishing *State v Peters* 729 S.W.2d 243 (Mo. Ct. App. 1987) held that the chemical test results were admissible in evidence since the method of analysis was approved at the time the results were offered, despite an improper retrospective application argument. The Court noted that the approved methods and techniques deal with the admissibility of blood alcohol chemical analysis. The Court's ruling was based on the fact that the regulations were determined to be procedural in nature.

The Court in *Eckhoff v Director of Revenue,* 745 S.W. 2d 815 (Mo. Ct. App. 1988) applied the same reasoning as used in *Kummer* when dealing with the approval of a reagent vial or ampule subsequent to the offense and breath test but prior to being offered in evidence. Operating a motor vehicle while intoxicated was the substantive aspect of the case while the determination of the fact of intoxication based on rules and regulations was the procedural component of the case. Procedural statutes and/or administrative rules can be applied retrospectively unless a contrary intent is evidenced in the enactment. Cf. *State v Schneider* 270 N.W.2d 787 (N.D. 1978).

Justice Adkins in an often quoted concurring opinion in *In Re Florida Rules of Criminal Procedure,* 272 So.2d 65 (Fla. 1972) distinguishes substantive verses procedural law. " 'Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof." " 'Rules of practice and procedure' includes all rules governing the parties, their counsel and the court throughout the progress of the case from the time of its initiation until final judgment and its execution."

*Fla. Const.* Art. V § 2(a) gives sole jurisdiction for the adoption of

96

rules for the *practice and procedure in all courts* to the Supreme Court, i.e., all *court* procedure is controlled by the Court. See for example *Bluesten v Florida Real Estate Commission,* 125 So.2d 567 (Fla. 1960); *Military Park Fire Control Tax District No. 4 v DeMarois,* 407 So.2d 1020 (Fla. 4th DCA 1981); *Markart v Johnson,* 367 So.2d 1003 (Fla. 1978); and *Graham v Murrell,* 462 So.2d 34 (Fla. 1st DCA 1984). Procedural rules and regulations governing the methods and techniques of chemical breath testing are part of the police power (executive) function (see *Bender, supra)* and do not involve court procedure. See for example *Petition of Ezell,* 446 So.2d 253 (Fla. 5th DCA 1984). When and how such evidence is dealt with during a trial or motion hearing does involve court procedure. Thus, retroactive application of a validly approved breath test instrument does not violate *Fla. Const.* Art. V, § 2(a).

Ex Post Facto laws occur when a change in the law increases punishment, changes the ingredients of the offense, or changes the ultimate fact necessary to establish guilt. Two elements must be present to fall within the ex post facto prohibition; 1. the law must be retrospective, and 2. it must disadvantage the offender affected by it. *Weaver v Graham,* 450 U.S. 24, 67 L.Ed. 2d 17, 101 S. Ct. 960 (1981). No ex post facto violation occurs if a change does not alter substantial personal rights but merely changes modes of procedure which do not affect matters of substance. Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto. *Dobbert v Florida,* 432 U.S. 282, 53 L.Ed. 2d 344, 97 S.Ct. 2290 (1977). For factually analogous cases see *Thompson v Missouri,* 171 U.S. 380, 43 L.Ed. 204, 18 S. Ct. 922 (1898), *Hopt v Utah,* 110 U.S. 574, 28 L.Ed. 262, 4 S. Ct. 202 (1884) and *Glendening v State,* 503 So.2d 335 (Fla. 2d DCA 1987). Since the retroactive application in the instant case is procedural in nature ex post facto considerations are not present.

The admissibility of a chemical breath test result on a modified instrument approved subsequent to the offense and actual test but prior to being offered into evidence does not violate the ex post facto prohibition even *assuming arguendo* that such change is substantive. The change does not increase the punishment or deprive the defendants of a defense, change the ingredients of the offense, or change the ultimate facts necessary to establish guilt. The change has no effect upon whether each defendant committed the crime of driving under the influence. It does not change the quantity or degree of proof necessary to establish guilt. The Court in *Thompson v Missouri, supra* stated, ". . . [W]e cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit

**97**

evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as committed."

Defendant's initial position is that the modified Intoxilyzer 5000 is not an approved machine until it is listed in HRS Rule 10D-42.024 promulgated pursuant to the notice requirements in *FS* Ch. 120 (1987) (Administrative Procedure Act). *FS*§ 316.1932(1)(f)1 (1987) provides:

> The tests determining the weight alcohol in the defendant's blood shall be administered at the direction of the arresting officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. *Such rules and regulations shall be adopted after public hearing,* shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section . . . [Emphasis added].

It would appear that the modified Intoxilyzer 5000 would be an approved machine when a rule (emergency or otherwise) approving said machine is adopted after a public hearing pursuant to *FS* Ch. 120 See *Eckhoff v Director of Revenue, supra, State v Kummer, supra,* and *Commonwealth v Hess,* 503 A.2d 448 (Pa. Super. Ct. 1986) and *Commonwealth v Benson,* 421 A.2d 383 (Pa. Super. Ct. 1980) cited in this Court's order in *State v Black, et al., supra.*

Based on the above and foregoing in conjunction with this Court's order in *State v Black, et al., supra,* the issue of whether the results of the modified Intoxilyzer 5000 are admissible is to be addressed at the guilt phase of the proceedings (at trial), i.e., was the modified machine approved by proper rule promulgation prior to trial. Therefore, it is hereby;

ORDERED and ADJUDGED that Defendants' Motions to Suppress are denied.

DONE and ORDERED in Chambers at Daytona Beach, Volusia County, Florida this 13th day of October, 1988.