STATE of Missouri,
Plaintiff–Respondent,

v.

Arthur E. VAUGHN,
Defendant–Appellant.

No. 15196.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 18, 1988.

Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PER CURIAM:

A jury found defendant Arthur E. Vaughn guilty of manslaughter in violation of § 565.024.1(2), RSMo Supp.1984. His punishment was assessed at imprisonment for a term of seven (7) years and he has been ordered to pay a fine of $500. Vaughn has appealed. His sole point is that the trial court erroneously and prejudicially admitted the result of a blood alcohol test which had not been approved by the Missouri Department of Health as required by §§ 577.020 and 577.026, RSMo

Supp.1984. In the circumstances presented, we affirm.

The automobile collision which gave rise to this prosecution occurred about 9:15 p.m. on June 13, 1986. The defendant was driving north on Highway 160 just south of Springfield, Missouri. In the words of one witness, it had "just turned dark." At the place where the accident happened, Highway 160 is a two-lane highway 24 feet wide with 8-foot shoulders. The highway runs north and south.

Mike Jones was driving south on Highway 160 immediately before the accident occurred. Jones was on his way home. His attention was drawn to a northbound vehicle which was coming "[s]traight at [him]." Jones waited to see if the driver would return to his own lane, but the other driver—the defendant—made no effort to do so, and Jones was obliged to drive off the road to avoid being struck.

Lawanda Meltabarger and her husband were also traveling south on Highway 160 just before the collision occurred. Mrs. Meltabarger's husband was driving. As Mrs. Meltabarger related the incident, she and her husband "... had just started down [a] hill and all of a sudden there was another vehicle in our lane going northbound and we swerved to get off the road to keep from hitting him, barely missing him and went off the road and he went past us." Mrs. Meltabarger was aware there was a "small foreign car" behind her vehicle in the southbound lane. So, after the northbound vehicle (defendant's automobile) had passed, Mrs. Meltabarger "... turned in [her] car seat. [She] turned to look behind ... to see if [the defendant] was going to get over on his side of the road, but he did not. He kept going straight and then I saw the crash when he hit the other vehicle." The impact, according to Mrs. Meltabarger, "was like a big explosion." Other witnesses corroborated the testimony given by Jones and Mrs. Meltabarger. Defendant's vehicle, a 1971 Ford, struck a Datsun being driven by one Deborah Taylor, the 31-year-old mother of a son 11 years of age. Ms. Taylor sustained a massive skull fracture from which she died instantaneously.

■ The State had a good deal of evidence indicating that the defendant was intoxicated. Kevin Esterline, a paramedic dispatched to the scene of the accident, observed that the defendant's speech was slurred and incoherent, and he considered the defendant's thought processes to be impaired. Esterline believed the defendant was intoxicated. Dan Pruett, another paramedic, noticed the smell of alcohol on the defendant's breath. He found the defendant's speech slurred to the point that the defendant was unintelligible. Pruett had the opinion the defendant was intoxicated.

Sgt. Don Richardson, a member of the State Highway Patrol, arrived at the scene of the accident about 9:30 p.m. Sgt. Richardson noticed the "[o]dor of intoxicants" in the defendant's automobile. The defendant was taken from the scene of the accident by helicopter and Sgt. Richardson "asked Troop D radio to send an officer by the hospital [to] arrest [the defendant] for driving while intoxicated." Sgt. Richardson's investigation indicated the defendant had been driving on the wrong side of the road and that several drivers had had to take evasive action to avoid being struck by the defendant's vehicle. After the defendant had been flown to the hospital, Sgt. Richardson attempted to interview him there. The defendant smelled of alcohol even though his face was partially covered with an oxygen mask. His speech was incoherent. Sgt. Richardson was of the opinion that the defendant was intoxicated.

Trooper Jim Simpson was sent to the hospital where the defendant was taken. Trooper Simpson's instructions were to determine whether the defendant was intoxicated. Trooper Simpson "smelled an obvious odor of intoxicants about [the defendant's] person," found the defendant to be so confused that he stuttered at times, and concluded, on the basis of his observation, that the defendant was intoxicated. At 10:30 p.m. Simpson arrested the defendant, gave him a *Miranda* warning and asked if he would submit to a blood alcohol test. The defendant agreed and a blood sample

was taken about 11 p.m. It may be noted, without going into detail, that the defendant offered evidence that he had been to a party before the accident occurred. The defendant testified he drank only one beer at the party. He had no memory, however, of the accident or of being taken to a hospital.

We have the view that the evidence was sufficient to support the judgment of conviction without evidence of any chemical tests. Defendant was convicted, as we have noted, of involuntary manslaughter as defined and denounced by § 565.024.1(2), RSMo Supp.1984. Section 565.024.1(2), RSMo Supp.1984, provided that:

"1. A person commits the crime of involuntary manslaughter if he:

.    .    .    .    .

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person...."

A lay or non-expert witness may give evidence that an accused was intoxicated, and that opinion, if it is based on observation, constitutes substantial evidence. *State v. Palmer*, 606 S.W.2d 207, 208[1, 2] (Mo.App. 1980); *State v. Michaels*, 543 S.W.2d 245, 250–51[7] (Mo.App.1976); *State v. Edmonds*, 468 S.W.2d 685, 688[6–7] [10] (Mo. App.1971). The testimony of the paramedics and the experienced officers who investigated the accident was sufficient to establish that the defendant was intoxicated when the fatal accident occurred.

The record further indicates that the defendant was driving at a high rate of speed on the wrong side of the road just as it became dark. He made substantially no effort to avoid oncoming traffic; at least two motorists were obliged to leave the roadway to avoid being struck. The evidence was sufficient to establish that the defendant was operating his vehicle with criminal negligence at the time of the collision. *See State v. Stottlemyre*, 752 S.W.2d 840, 844[4] (Mo.App.1988).

As noted, the sole point briefed in this court is that the trial court erroneously received the result of a chemical test for blood alcohol which had not been approved by the Department of Health. After the defendant had been taken to a Springfield hospital and at Trooper Simpson's request, a blood sample was drawn and placed in a vial by an emergency room nurse. The sample was sent to Jefferson City, where it was analyzed for blood alcohol content by a chemist employed by the Missouri State Highway Patrol. Using a method of analysis known as gas chromatography, this chemist determined that the alcohol content of defendant's blood was .20 percent. The blood, as we have indicated, was taken about an hour and a half after the accident occurred. The result of the test for blood alcohol was received over the defendant's objection.

The defendant argues at length that the result of the blood test was inadmissible, relying heavily on the decision of this court in *State v. Peters*, 729 S.W.2d 243 (Mo.App. 1987). In *Peters*, this court upheld a trial court's suppression of evidence of blood alcohol content in a case in which the defendant was charged with driving while intoxicated and driving on the wrong side of the road. The substance of the defendant's motion to suppress was that the statutory provisions now codified as §§ 577.020.3, 577.020.4 and 577.026.2, RSMo 1986, require that analyses of blood for alcohol content be performed according to techniques, devices, equipment or methods approved by the Department of Health and because that department had not approved any methods for determining the alcohol content of human blood, a gas chromatographic determination of the defendant's blood alcohol content was inadmissible. We agreed, and urged the Department of Health to promulgate the statutorily mandated regulations. After *Peters* was handed down, the Department of Health promulgated regulations for the express purpose of establishing approved methods and analytical principles to determine blood alcohol content. Those regulations, now codified as 19 CSR 20–30.070, authorize chromatographic identification and quantitation of alcohols in human blood.

The State argues that because the evidence to which objection is made meets the requirements of rules established subsequent to the decision in *Peters,* the "policy considerations of *Peters* have been met." The State also argues that in *State v. Stottlemyre,* 752 S.W.2d 840, 842–43[2], the Western District held that failure of the Department of Health to promulgate rules and regulations establishing procedures to determine the alcohol content of human blood did not prevent the State from introducing the result of an unauthorized blood alcohol test in a prosecution for manslaughter under § 565.024, RSMo.1986.

It is arguable, we suppose, that our holding in *Peters* did not exclude the State's evidence of the defendant's blood alcohol content in this case. It has been observed that the language and intent of the Implied Consent Law [now §§ 577.020–577.041, RSMo 1986] is not clear, *State v. Kummer,* 741 S.W.2d 285, 288, n. 2 (Mo.App.1987), and the State's evidence of the defendant's blood alcohol content in this case may have been admissible under some theory other than the implied consent of the defendant. In any case, a gloss upon this court's opinion in *Peters* is unnecessary. The Department of Health has approved several methods of determining the blood alcohol content of a sample of human blood. It is not likely that the question raised in *Peters* will be raised again.

■ We forego further discussion of the point because the sole assignment of error made by the defendant was not properly preserved for review. The defendant's solitary point is that the trial court erred in admitting the result of a gas chromatographic test for blood alcohol "... because the Division of Health has failed to properly issue rules and regulations regarding the method for testing of blood for alcohol offenses pursuant to Sections 557.020 [sic] and 577.026...." This point was raised in the trial court by a motion to suppress which alleged the blood sample had been obtained by an unlawful search and seizure in violation of Chapter 542, RSMo 1986. We are in doubt that the Department of Health's failure to approve the test is a matter within the scope of a statutory motion to suppress evidence, *State v. Holzschuh,* 670 S.W.2d 184, 185[2] (Mo. App.1984), but it is the defendant's failure to raise the point he now asserts in his motion for new trial which precludes our review of his assignment of error.

Rule 29.11(d) provides, in pertinent part, that:

"... In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial...." Where definite objections or requests were made during the trial, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient."

Although Rule 29.11(d) is not as strict as former Rule 27.20(a), which it replaced, it is still true that issues not presented in a motion for new trial are not preserved for review, except as plain error. *State v. Harris,* 620 S.W.2d 349, 354[7] (Mo. banc 1981). Further, if the contention made on appeal is not contained in the motion for new trial, that contention has not been preserved for review. *State v. Blair,* 631 S.W.2d 91, 94 (Mo.App.1982); *State v, Harris,* 534 S.W.2d 516, 519[3, 4] (Mo.App. 1976).

On trial and in his motion to suppress, the defendant did assert, as one of the nine reasons why all evidence of intoxication should be suppressed, that:

"The techniques, devices, equipment, and methods used to test defendant's blood, breath, saliva, or urine were not approved by the state division of health."

Paragraph 2 of the defendant's motion for new trial includes the following assignment:

"2. ... [T]he trial court committed prejudicial error when it overruled defense counsel's Motion to Suppress Evidence ... and allowed the State to introduce the alleged results of defendant's blood test into evidence *because the State failed to comply with the strict procedures necessary for taking blood samples as set forth in Chapter 577 of the Missouri Revised Statutes...."*

The defendant's motion for new trial specifically assigns error to the State's failure to follow the procedure prescribed for taking blood samples. That procedure is prescribed by § 577.029. Even construing the defendant's trial objection as required by Rule 29.11(d), the motion for new trial does not assert error because the Division of Health had failed to issue rules approving tests for the alcohol content of human blood. As our Supreme Court put the principle several years ago, "... varying, shifting grounds of objection at trial, assignment[s] of error in [the] motion for new trial and assignment[s] of error on appeal present no basis for review in this court." *State v. Davis*, 482 S.W.2d 486, 489 (Mo. 1972). To reiterate, because the point now advanced for consideration was not contained in defendant's motion for new trial, that contention is not before us for review. *State v. Pollard*, 719 S.W.2d 38, 41 (Mo. App.1986).

For the reasons detailed and discussed, the judgment of conviction is affirmed.

PREWITT, P.J., and HOGAN, FLANIGAN, and MAUS, JJ., concur.